[Civ. No. 14645. Second Dist., Div. Three. Nov. 15, 1945.]

WINONA B. STEVENS et al.; Appellants, v. MAJOR E. HUTTON, JR. et al., Respondents.

Forrest A. Betts and William J. Currer, Jr., for Appellants.

Tapper & Tapper and Swaffield, Swaffield & Madden for Respondents.

SHINN, J.—Plaintiffs and appellants brought their action to recover from defendant Hutton, who was their agent, gains and profits alleged to have been made by him in the course of disloyal conduct and breach of duty. The trial resulted in findings in favor of said defendant upon the material issues, and judgment in his favor. Upon the findings, judgment necessarily went in favor of others who were sued for alleged participation in the same transactions.

Plaintiffs are husband and wife. In May of 1933, being the owners of extensive properties, including numerous parcels of real estate which they operated under the name of "Bassett Estate," by memorandum in writing they engaged defendant Hutton, a real estate broker, to dispose of 11 parcels of realty, and gave him an exclusive agency to sell or exchange the same within a period of six months for prices and on terms which might be acceptable to them. Hutton, herein referred to as defendant, was to receive no compensation for his services other than commissions at realty board rates on deals which he consummated. Plaintiffs had had in their employ as manager a competent and eminent certified public accountant, but in July of 1933, at the suggestion of defendant, they decided to open an office in one of their buildings in Pasadena, to employ a bookkeeper to assist in the management of the several properties, and to dispense with the services of their former manager. Through advertising they met and employed defendant Jones as office manager. Defendant Hutton gave up his employment with a realty company in December, 1934, and thereafter devoted his full time to plaintiff's properties. In April, 1935, no sales having been made, the parties entered into a new agreement, which was prepared by Mr. Stevens after consultation with his attorney, and this agreement included proposed leasing of the properties, as the first one had not. It also made provision for 10 per cent commission under certain circumstances, instead of the realty board commission. The agreement recognized that defendant had performed services "in the management of the properties," stated that this had been done to keep them in good order, and that he expected no remuneration in addition to commissions which he might earn. There was nothing in either agreement which obligated defendant to render any services other than those pertaining to the finding of purchasers or lessees of the real estate.

The complaint stated three causes of action, the first

for an accounting, alleging on information and belief that defendant had wilfully and fraudulently appropriated considerable sums of money which belonged to plaintiffs and had caused false books and accounts to be kept to conceal such misappropriations. The third cause of action alleged the receipt by defendant of a secret profit of $4,000 upon the sale of one of plaintiffs' properties. As to the first cause of action an accounting was had with the assistance of an auditor appointed by the court, and it was found upon the accounting that nothing was due to plaintiffs. The third cause of action was dismissed by plaintiffs at the commencement of the trial. The second cause of action alleged that in February, 1938, defendant purchased from Mrs. Stevens for the sum of $6,250 all the capital stock of the Hillhurst-Finley Corporation, which 'represented ownership of two apartment houses in Los Angeles, known as the Hillhurst-Finley Apartments. It was alleged that defendant concealed from plaintiffs the fact that he was the purchaser of the property and advised plaintiffs that it would be to their best interests to sell the stock, and that they transferred the stock to a third person in reliance upon the advice of defendant and without knowledge that he was the real purchaser. There was no allegation as to what the property was worth, nor was it alleged that it was not to the best interests of plaintiffs to sell it for the price which they received. Plaintiffs' theory of the case at the time the second amended complaint was filed evidently was that defendant, having concealed the fact that he was purchasing the property for himself, acquired it subject to a constructive trust and was due to account to plaintiffs for the same and for any profits made in the operation or sale of the property or any part of it. No attempt was made by plaintiffs to rescind the transaction. Four years after the sale was made they brought this action. There was a general allegation that defendant, through concealing the true value of various properties, had been able to obtain them for himself at a fraction of their true value, but there was no allegation that he obtained any advantage in the purchase of the Hillhurst-Finley stock. Nevertheless, the action was tried, and it is argued on appeal, as if the mere purchase of the stock by defendant placed upon him the burden of proving that the price paid was adequate, that he had dealt openly and fairly with plaintiffs, had not been guilty of any abuse of confidence or of any misrepresenta-

tion, and that he had made a full and complete disclosure of all facts which he knew or had reason to believe would influence plaintiffs in their decision whether they would sell the property. These, generally, are the duties of trustees in transactions with their beneficiaries, under principles stated in sections 2228 to 2235 of the Civil Code.

The court found that defendant paid full value for the property, that he disclosed to Mrs. Stevens the fact that he was the purchaser, and was taking title in the name of defendant Lawrence as his agent, and that he "fully and fairly disclosed all material facts concerning the said Corporation, its shares of stock and the properties owned by it, and concerning the affairs of said Corporation . . . and that he (defendant Hutton) did not conceal from her (Mrs. Stevens) any material or other facts known to him concerning the said shares of stock of said Corporation, or the affairs of the said Corporation, or the properties owned by the said Corporation." The court also found that defendant did not advise Mrs. Stevens to sell the property and that he did not conceal or misrepresent. its value. These findings find substantial support in the evidence; indeed, it is not contended that they are unsupported.

Plaintiffs alleged in each cause of action of their complaint that "Defendant Hutton undertook and assumed the duty of caring for and protecting in all particulars the financial interests and welfare of the plaintiffs insofar as related to the Bassett Estate and to the properties held in connection therewith." Although the court expressly found this allegation to be untrue, the appeal is argued by plaintiffs as if it had been found to be true. They do not directly challenge the sufficiency of the evidence to justify the finding; they merely assert that defendant was the manager of their business interests, was under a general duty to advise and protect them in all respects as to their real property, and that they relied implicitly upon the advice which he gave them.

Plaintiffs preface their argument as follows: "Where the agent is employed for the purpose of making possible a sale at an advantageous price, which price is gained by reason of improvements made or the care or skill of the agent, the agent must advise the principal fairly and fully as to the possibilities and character of the property, the nature of the improvements which could be made and their probable effect upon the sales price. He is also bound to disclose the possibility of a gain by holding the property and to advise the

principal as to any such possible gain in value." Plaintiffs quote from the Restatement, Agency, section 390, Comment a, on the subject of disclosure, as follows: "Hence, the disclosure must include not only the fact that the agent is acting on his own account (see § 389), but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal. This includes, in the case of sales to him by the principal, not only the price which can be obtained, but also all facts affecting the desirability of sale, such as the likelihood of a higher price being obtained later, the possibilities of dealing with the property in another way, and all other matters which a distinterested and skillful agent advising the principal would think reasonably relevant."

In order to give full treatment to plaintiffs' argument, it is necessary to state the facts upon which it is based. In November, 1935, a property owned by Mrs. Stevens at the corner of Colorado and Euclid in Pasadena was leased, through defendant's efforts, to the Thrifty Drug Company for 15 years at a rental of 3 per cent of gross receipts, with a minimum of $1,500 per month. In order to make this lease, Mrs. Stevens expended, under defendant's direction and management, some $37,000 in improving the property. Defendant spent two months superintending the alterations, although he handled none of the money. This property was later sold by plaintiffs for $190,000, which was greatly in excess of what it had been considered to be worth before the improvements and the lease were made. Thereafter defendant attended to the remodeling of the adjoining building at an expense of $4,000 and made leases of store rooms therein at substantial monthly rentals. In November, 1936, he negotiated a sale of this property to one MacMurray for a price of $106,000. Early in 1938 he received $15,300 in commissions for the transactions which he had negotiated up to that time. Defendant made somewhat extensive studies of a 5-acre parcel, with a view to its subdivision and development, but the project was deferred in 1938. He also negotiated a sale of a bungalow court for plaintiffs for $6,000.

Plaintiffs insist that defendant knew or should have known that the apartment property which he purchased would be rendered more salable if improvements should be made, and that he knew or should have known and disclosed to plaintiffs the possibility of obtaining a higher price at a

future time. In brief, the argument is that if defendant believed it was wise for him to buy, he must have believed that it was unwise for plaintiffs to sell; that he must have believed that the property would advance in value or he would not have bought it, and that he therefore should have urged plaintiffs not to sell it to him. Plaintiffs direct attention to the varied and competent services of defendant, which we have but briefly stated, and they deduce from them an agency which bound defendant to render the same services with respect to the several other properties of plaintiffs, and particularly the properties of Hillhurst-Finley Corporation. This argument ignores the findings as to the limited terms of the agency, and also the patent fact that the apartment property was in nowise comparable to the business property. After defendant bought the property he increased the encumbrance on the Finley Apartments from $11,600 to $17,000 and expended several thousand dollars in improvements. A year and a half after he purchased it he sold the Finley Apartments for a gross price of $27,500, still retaining the encumbered Hillhurst Apartments, which were owned by the corporation. There was evidence that the sale he made was an exceptionally good one, both the broker who made the sale and the purchaser having recently come from a foreign country. The argument that defendant deliberately neglected the apartment property, in order that he might acquire it, is not supported by the evidence. Considerably more was spent on the apartments at defendant's suggestion before its purchase by him than was spent afterwards, and efforts to sell the property had been unavailing. It is not claimed that defendant had or should have had knowledge of any particular facts which indicated that the property would advance in value. The implied finding was that defendant had no knowledge of impending improvement of market conditions or of any facts affecting the value of the property which should have been disclosed to plaintiffs. There was no evidence which would have required the court to find that the fortuitous events which occurred in the 18 months following the purchase were reasonably foreseeable.

A further contention of appellants is that "defendant Hutton was duty bound as a matter of law to procure independent advice for Mrs. Stevens," that she had no independent advice and is therefore not bound by the transaction. It does not appear that Mrs. Stevens received inde-

pendent advice concerning the sale in question,. but the receipt of such advice was not indispensable to a valid sale. ■ In reviewing transactions between trustee and beneficiary, if the proof shows that the latter received no independent advice, the courts invariably give careful consideration to that fact. The importance of it depends upon the circumstances of the transaction, but in any case, if no independent advice was received, it is only one of the facts to be weighed in determining whether the trustee performed his full duty. (*Brown* v. *Canadian Indus. Alcohol Co.* (1930), 209 Cal. 596 [289 P. 613]; *Smith* v. *Lombard* (1927), 201 Cal. 518 [258 P. 55]; *Estate of Cover* (1922), 188 Cal. 133 [204 P. 583]; *Johnson* v. *Studley* (1926), 80 Cal.App. 538 [252 P. 638]; *Heney* v. *Heney* (1926), 80 Cal. App. 301 [251 P. 841]; *Hemenway* v. *Abbott* (1908), 8 Cal. App. 450 [97 P. 190]; Pomeroy's Equity Jurisprudence, 5th ed., vol. 3, pp. 796, et seq.) ■ The primary consideration is whether the consent of the beneficiary was given competently, voluntarily, and with a clear understanding of the material facts which would reasonably have influenced his judgment. Where the beneficiary is found to have been competent, the conclusion of the court that the receipt of independent advice was or was not indispensable under the circumstances is one of fact.

■ A brief reference to the evidence will demonstrate that the conclusion of the trial court upon this point was fully justified. Mr. and Mrs. Stevens were wealthy people, Mr. Stevens being a mining engineer by profession, with mining interests in Mexico and Canada. Although they had heavy investments in real estate, they were primarily interested in dealing in securities. There was evidence that Mr. Stevens operated in the stock market on a large scale and that he maintained a stock quotation ticker in his residence. They did not neglect their real estate interests, but employed competent managers. Mrs. Stevens had owned the apartment properties for at least five years before she disposed of them to defendant. They had not been profitably operated and she knew this from the monthly statements which she had received. It was the desire of Mr. and Mrs. Stevens to liquidate their real estate holdings. That was the reason for their employment of defendant. In their closing brief their counsel say: "In other words, it is obvious that appellants were anxious to sell; they were anxious to sell all of their

properties . . . they were also anxious to make deals. They wanted to liquidate as fast as possible.'' There was evidence that defendant first proposed to Mrs. Stevens that he purchase the property on Saturday, February 21, 1938, and that an agreement for the transfer of the stock was entered into the following Monday. Mrs. Stevens first asked $7,000 for her stock, but in the discussion the price of $6,250 was agreed upon and Mrs. Stevens replied that she thought she would sell it. The deal was closed through escrow within a week. Defendant then endeavored to induce Mrs. Stevens to pay for certain termite work on the premises and after a discussion she gave him a check for $312.50, which would have been the amount of a broker's commission on a $6,250 sale.

█ As already noted, the law does not require that one who is fully informed as to the facts should have independent advice concerning them nor that one who is fully competent to form a sound and advised opinion must have assistance in forming it. The requirements for disclosure and advice are subject to the limitation ''that if the principal manifests that he knows all material facts or is willing to deal without knowing them, the agent is not liable if he fails to reveal them.'' (Restatement, Agency, § 390, Comment b.) Manifestly, if there is no duty upon the part of the agent to further inform his principal, there is no duty to insist or to suggest that the principal obtain independent information on the subject. █ There is abundant evidence in the record which tends strongly to prove that Mr. and Mrs. Stevens had no desire to keep any of their real estate for a possible appreciation in value, that they were interested only in disposing of it at what would be at the time fair values, and that they were not interested in receiving advice as to the prospects for better prices in the future. Defendant was dealing with intelligent, well informed people who had definite opinions as to what they wished to do with their property and who evidently believed they could do better in securities than in real estate. █ The findings to the effect that defendant dealt honestly with plaintiffs as their agent are sustained by the evidence, and the findings support the conclusions of law and judgment.

It is unnecessary to consider respondent's further contention that plaintiffs had to rescind the transaction before they could escape from it.

The judgment is affirmed. The attempted appeal from the order denying motion for new trial is dismissed.

Desmond, P. J., and Wood, J., concurred.

·Appellants' petition for a hearing by the Supreme Court was denied January 10, 1946.