[Civ. No. 15474.   Second Dist., Div. Three.   Mar. 21, 1947.]

THELMA M. MARSIGLIA, Appellant, v. SAM MARSIGLIA,
Respondent.

Sullivan, Lane & Clarke for Appellant.

John J. Craig for Respondent.

KINCAID, J. pro tem.—This is an appeal from a judgment in favor of defendant following trial of an action instituted by plaintiff in which she seeks by her complaint to set aside and cancel a property settlement agreement and to quiet title to certain real property. By count one of her complaint she alleges that on July 14, 1944, she filed a complaint for divorce against ·her husband, the defendant herein; that thereafter he threatened her with bodily injury and that if she did not consent to go to an attorney of his choosing and sign a type ·of property settlement agreement meeting with his approval that he would kill or maim her; that under fear of such threats she consulted and substituted in the divorce action the attorney designated by her husband in place of the counsel of her own choosing; that the new counsel prepared a written property settlement agreement which was signed by the parties on September 26, 1944.

Plaintiff further alleged that at the time of the filing of the complaint for divorce and of the execution of the property settlement agreement she and defendant owned community property of the value of approximately $7,500, consisting of a house and lot situate at North Hollywood, California, household furniture and furnishings, one 1935 Plymouth sedan, and certain war bonds; that pursuant to the property settlement agreement all of said community property was granted and assigned to defendant, with the exception of $500 in cash which was paid to plaintiff; that the agreement is void by reason of the manner in which it was procured from plaintiff. For a second cause of action plaintiff sought to quiet title to her one-half interest in the above mentioned real property.

Defendant by his answer denied substantially every allegation of the complaint, excepting the execution of the property settlement agreement and the entry of the interlocutory decree of divorce. By way of affirmative defenses, defendant alleged that prior to the filing of the divorce action by plaintiff she retained attorneys Redmond and Redmond to represent her, following which she employed Attorney Daniel W. Gage, and thereafter employed and had substituted as her attorney of record, Jay Gralla; that after the filing of the divorce action but prior to the entry of defendant's default therein, the plaintiff committed an act of adultery; that plaintiff confessed to defendant and admitted to her attorney that she committed such act of adultery and signed a written statement to that effect; that plaintiff told defendant that she did not want her

act of adultery to become public and did not want defendant to file a cross-complaint against her on the ground of adultery or otherwise, and that if he would not charge her with such act she would accept the sum of $500 in full of all claims for alimony, support, attorney's fees and costs, and would transfer and convey all of the property described in plaintiff's complaint as being community property to defendant; that thereupon the property settlement agreement was prepared by plaintiff's attorney, Jay Gralla, and was signed by the parties hereto without any duress of any kind being exercised on plaintiff; that at the same time and under the same conditions plaintiff executed and delivered to defendant a grant deed to the real property described in her complaint; that plaintiff's causes of action are res judicata, she is estopped from prosecuting this action and has been guilty of laches in prosecuting her claim herein.

After trial of the instant cause the court by its written findings of fact and conclusions of law found that the parties did, at the time of the filing of the complaint, own the community property described therein excepting the war bonds; that, with the exception of the marriage and the filing of the complaint for divorce, all of the other allegations of her complaint are untrue. The court further found that the property settlement agreement between the parties was freely and fairly entered into, that plaintiff understood the contents thereof, that she was fully advised in connection therewith by her attorney, that no force, threats, duress or fraud was practiced upon her and that said agreement is a valid and binding one. The court further found that plaintiff no longer has any interest in the property described in the complaint and that the allegations of defendant's affirmative defenses are true.

The primary point urged by plaintiff on this appeal is that the court's findings of fact and conclusions of law are not supported by the evidence. She concedes that, while it is probably true that the question of threats alone made to the plaintiff under the circumstances here existing would not be such as to necessitate the cancellation of the contract of the parties, nor would the question of advice, whether proper or improper, of her attorney, nor the fact that the wife received only a nominal consideration be sufficient in and of themselves upon which to base a cancellation of the contract between the parties, nevertheless, she contends, when taken as a whole

and the entire record is considered these things, if true, would necessitate a cancellation of the contract between the parties.

"Property settlement agreements occupy a favored position in the law of this state and are sanctioned by the Civil Code. (*Hill* v. *Hill*, 23 Cal.2d 82, 89 [142 P.2d 417]; *Hensley* v. *Hensley*, 179 Cal. 284, 287 [183 P. 445]; Civ. Code sec. 158, 159.) Such agreements are usually made with the advice of counsel after careful negotiations, and the courts, in accord with legislative sanction, prefer agreement rather than litigation. (*Hill* v. *Hill, supra,* at p. 89.) When the parties have finally agreed upon the division of their property, the courts are loath to disturb their agreement except for equitable considerations. A property settlement agreement, therefore, that is not tainted by fraud or compulsion or is not in violation of the confidential relationship of the parties is valid and binding on the court." (*Adams* v. *Adams* (1947), 29 Cal.2d 621, 624 [177 P.2d 265].)

In our examination of the record for the purpose of ascertaining whether the finding of the court to the effect that no fraud, compulsion or violation of the confidential relationship of the parties occurred either in the terms of the property settlement agreement or in the circumstances surrounding its execution, is sustained by the evidence, we are governed by several established principles of equity. As was said in the case of *Estate of Cover* (1922), 188 Cal. 133, 144 [204 P. 583]: "[A] husband, by reason of the marital relation, is bound in his dealings with his wife to the highest and best of good faith and as a consequence is obligated in such dealings not to obtain and retain any advantage over her resulting from concealment or adverse pressure, and he must, if he would avoid the presumption of undue influence emanating from the procurement of any advantage over her, make full and fair disclosure to her of all that she should know for her benefit and protection concerning the nature and effect of the transaction, or else he must deal with her at arm's length and as he would with a stranger, all the while giving her the opportunity of independent advice as to her rights in the premises." (See, also, *Auclair* v. *Auclair* (1946), 72 Cal.App.2d 791, 801, 802 [165 P.2d 527]; *Norris* v. *Norris* (1942), 50 Cal.App.2d 726, 733 [123 P.2d 847].)

The presumption of undue influence which arises where the husband gains an advantage in a transaction with his wife is a disputable one and may be overcome by proof of

a full and fair disclosure of all that the wife should know for her benefit and protection concerning the nature and effect of the transaction. ■ Proof of the receipt by the wife of independent advice is not essential in order to overcome the presumption if the evidence shows she was fully advised as to the nature of the transaction, as to all facts essential to her protection and that she freely and voluntarily executed and delivered the conveyances. (*Smith* v. *Lombard* (1927), 201 Cal. 518, 524 [258 P. 55] ; *Estate of Brimhall* (1943), 62 Cal. App.2d 30, 34 [143 P.2d 981] ; *Stevens* v. *Hutton* (1945), 71 Cal.App.2d 676, 683 [163 P.2d 479] ; *Macaulay* v. *Booth* (1942), 53 Cal.App.2d 757, 760 [128 P.2d 386] ; *Brown* v. *Canadian Indus. Alcohol Co.* (1930), 209 Cal. 596, 599 [289 P. 613].) This is true even where the attorney who prepared the conveyances had been consulted by and was acting for both the parties. (*Smith* v. *Lombard, supra,* pp. 524-525.)

■ The evidence bearing upon the issues is somewhat conflicting but viewing it most favorably in support of the judgment shows, in part, that no threats of any kind were ever made by defendant to plaintiff in connection with the divorce proceedings or to get her to make or execute the property settlement agreement or the grant deed, unless the statement by defendant of his then intention to contest the divorce on the ground of adultery may be so considered. After plaintiff, at the trial of the within action, had specifically waived any question of privileged communication between herself and her attorney, Jay Gralla, the latter testified that he met plaintiff and defendant at the same time as a result of going to their home by appointment to interview them as prospective witnesses in another case. They thereupon told him of the pending divorce action and in response to a question addressed to her by defendant plaintiff told of the circumstances surrounding the commission by her of the act of adultery heretofore mentioned. Plaintiff's counsel thereupon offered to stipulate that the act of adultery was committed by plaintiff, which offer of stipulation was accepted. Mr. Gralla then continued with his testimony to the effect that the parties then told him that they had agreed upon a property settlement by which plaintiff would get $500 and the remainder of the community property would be given to defendant; that although plaintiff then had an attorney of record in the divorce action, Gralla was asked if he would be willing to be substituted as counsel

in the case. Upon his accepting the appointment, a substitution of attorneys was prepared and filed. Thereafter, Gralla invited plaintiff to his office to discuss the case and the property settlement agreement. She came to his office alone and he asked her whether, by reason of the circumstances under which the matter of the property settlement had theretofore been discussed, the proposed terms were agreeable with her or whether there was anything to which she might wish to object; that so long as he acted as her counsel he would see that her rights were protected and if she had any other desires to inform him and he would do whatever he possibly could for her; that under a charge of adultery the court could in its discretion give defendant all of the property. Thereupon, plaintiff told Gralla that under the circumstances she was satisfied with the terms of the property settlement agreement and wanted to get the matter settled and over with as quickly as possible. He thereupon drew the property settlement agreement, mailed it to plaintiff's residence, and a few days thereafter received it back, duly executed by the parties. At the trial of the divorce action the defendant was not present, he having previously defaulted therein, and Gralla asked plaintiff as a part of her testimony in the divorce proceedings whether or not a property settlement agreement had been entered into and as to whether she was satisfied with the payments and conditions contained therein, to which she replied in the affirmative.

Plaintiff testified in the instant case that while the community property in question was worth about $7,500, some $2,300 was owed against the house and lot. Defendant testified that he paid plaintiff in connection with the property settlement had between them the sum of about $1,000 and some war bonds.

The foregoing evidence justifies the trial judge in believing that, regardless of the nature of origin of the attorney-client relationship between Gralla and the plaintiff, she was subsequently afforded the opportunity, and was invited by her attorney to fully discuss the terms of the proposed agreement and to register any objections which she might have to its contemplated provisions. She was alone with her attorney, free from any coercion which the presence of the defendant might have implied and was assured by Gralla of his determination to see that her rights and interests were protected.

The evidence, taken as a whole, is amply sufficient to overcome any presumption of undue influence on the part of the

defendant in his dealings with plaintiff as to the property in question. There is substantial evidence to sustain the court's findings, including, in effect, that plaintiff had full knowledge of all the facts necessary for her protection prior to the time she executed the property agreement and grant deed; that she executed them with full understanding of their contents and meaning, and with the benefit of the independent advice of her attorney.

We have considered the several additional points presented by plaintiff but consider them to be of minor importance and as having no bearing upon the ultimate result of this appeal.

The judgment is affirmed.

Wood, J., concurred.

SHINN, Acting P. J.—I concur in the foregoing opinion, but wish to add a few remarks with respect to a phase of the case not treated in the briefs. Plaintiff, with an action for divorce pending, confessed to adultery with her husband's brother. At the trial of the instant case her counsel stipulated to her guilt. In the face of her confession and defendant's threat to charge her with the adultery by cross-complaint, she entered into a collusive agreement with defendant, by the terms of which, in consideration of an agreed division of the community property, the existence of facts which would have constituted the defense of recrimination would be concealed from the court and plaintiff would be enabled to obtain a decree of divorce without having to meet the defense. In plain terms, the parties agreed to perpetrate a fraud upon the court and they accomplished that purpose. The property settlement agreement of which plaintiff now complains was an inseparable part of their unlawful scheme. Granted that either one could have withdrawn from the agreement before it had been fully executed, neither could be heard to complain after the purposes had been fully accomplished. The parties stood *in pari delicto;* the judgment leaves plaintiff in the bed she made for herself and hence does her no injustice.