[Civ. No. 6352.   Fourth Dist.   Jan. 6, 1961.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., et al., Appellants, v. VAN A. STEELE, Respondent.

Frank S. Fitts and Lyle M. Stevens for Appellants.

Winthrop O. Gordon for Respondent.

SHEPARD, J.—Bank of America National Trust and Savings Association, a national banking association, executor of the estate of Joseph S. Thurston, deceased (hereinafter called "Bank"), and Old Homestead, a corporation (hereinafter

called "Homestead"), brought this action against Van A. Steele (hereinafter called "Steele"), for reformation, termination of agreement, and declaratory relief regarding a real estate brokerage contract between Joseph S. Thurston, Bank's deceased (hereinafter called "Thurston"), and Steele, covering sales of certain land in Laguna Beach. Steele cross-complained, likewise for declaratory relief, and for money judgment. Judgment was rendered for Steele, against Bank and Homestead, on both the complaint and the cross-complaint, in substance holding the brokerage contract valid and awarding Steele $3,000 earned brokerage. Bank and Homestead appeal.

Appellants base their appeal on the sole ground that the evidence is insufficient to support the findings of fact, conclusions of law, and judgment. Since this is the only ground of appeal, it is well to keep firmly in mind the oft-repeated and long-established rule regarding the position of the appellate court on such a ground. ▮▮ It is well and succinctly stated by our Supreme Court in *Brewer* v. *Simpson,* 53 Cal.2d 567, 583 [1-3] [2 Cal.Rptr. 609, 349 P.2d 289], as follows:

" 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact,' and 'When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.' [Citation.] ▮ 'Appellate courts . . . if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding; and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the court should be realistic and practical.' [Citation.] ''

Bearing this rule in mind and disregarding conflicts, the general substance of the facts shown by the record is as follows: Thurston and Steele had been acquainted as neighbors for about 14 years. Thurston owned a considerable acreage in Laguna Beach which he desired to subdivide and sell. Steele was a licensed real estate broker. Frank Fitts (hereinafter called "Fitts"), an attorney at law in Laguna Beach, was acquainted with both. Fitts had done legal work for Thurston, and both Steele and Thurston had visited Fitts' office together. In the winter of 1954-1955, Thurston started subdivision of his acreage into building lots in a tract numbered 2204. He

employed Steele, on oral contract, to sell the lots.  Later in
that year he opened up tract number 3036, and orally em-
ployed Steele to sell.  Discussions were had about the orderly
subdivision of the entire tract of 154 acres of land then owned
by Thurston.  Thurston became ill and entered the hospital
in October.  From there he went to the home of a Mr. and
Mrs. Storrs to convalesce.  On October 11, 1955, he signed a
general power of attorney to Steele.

November 10, 1955, Steele, on Thurston's behalf, contacted
Fitts to have a contract drawn covering Thurston's employ-
ment of Steele on the sale of Thurston's property.  The orig-
inal draft was delivered to Thurston and he changed some of
the terms.  The property description was at first left blank.
The final draft was discussed with Fitts about December 15,
1955, at which time both Thurston and Steele went separately
to Fitts' office.  Thurston apparently was in possession of the
final form of the contract for about two weeks before it was
signed.  December 31, 1955, Steele and Thurston conferred on
the contract in the Storrs' home in the presence of both Mr.
and Mrs. Storrs.  Steele filled in the blanks, including the de-
scription, in Thurston's presence, and thereafter Thurston and
Steele signed, shook hands, and Steele left.  The description
included the whole of the 154 acres owned by Thurston.
Thurston was mentally clear and bright at that time and re-
mained so until his death, about one and one-half years later.

The contract provided, *inter alia*, for expenditures of a
minimum of $50 per month on advertising and required Steele
to design and present to the buying public and to other brokers
promotional advertising, as well as counseling with Thurston
on subdivision plans, and otherwise giving Steele's best
efforts in  selling.  Steele was to receive 10 per cent of the
first $5,000 in sales and 5 per cent thereafter.  The term of the
contract was five years.

Thereafter Thurston caused the formation of Homestead
with Thurston as president, and deeded the land to it.  Steele
continued, after the formation of Homestead and the deeding
of the property to it, to work on the sales.  No one objected
to Steele about the description. The power of attorney was
revoked in September 1956, but no notice of termination nor
any objection of any kind was given or made to Steele about
the brokerage contract.  Steele lived up to the terms of the
contract and from month to month expended more in adver-
tising than the $50 per month minimum agreed upon.  Deeds

to purchasers were signed by Homestead and it from time to time paid Steele his brokerage for lots sold. Thurston died in March 1957. A Jack Martin became president of Homestead. Following a sale of 27.7 acres on May 31, 1957, Steele's attorney wrote to Homestead about Steele's brokerage thereon. Martin made no claim at that time that the description in the brokerage contract of December 31, 1955, was incorrect. The first notice of any repudiation of the contract was April 2, 1958.

### Findings of Fact and Conclusions of Law

Appellants complain, first, of the findings of the trial court to the effect that Steele did not at all times act in a fiduciary capacity and did not at all times have the complete trust and confidence of Thurston; that Thurston had the advice of Fitts and others; that Steele's insertion of the property description in the contract was not contrary to Fitts' instructions. An examination of the testimony convinces us that the reasonable inferences could well be made from the evidence fully supporting these findings. After Thurston deeded the property to Homestead, Steele was no longer acting for Thurston individually. In the preparation of the original contract of brokerage, Thurston visited and counseled with Fitts respecting the contract, making some changes therein. It sufficiently appears that Thurston and Steele, in the preparation of the brokerage contract, were dealing at arm's length in the legal sense. However, it should also be borne in mind that these findings are, in part at least, probative rather than ultimate facts, and were unnecessary to that extent. The ultimate question was whether or not Thurston signed the agreement voluntarily while fully competent and with a clear knowledge of the material facts upon which his judgment should be based. (*Wilbur* v. *Wilbur*, 197 Cal. 1, 15 [4] [239 P. 332]; *Stevens* v. *Hutton*, 71 Cal.App.2d 676, 683 [4-5] [163 P.2d 479]; *Pfingst* v. *Goetting*, 96 Cal.App.2d 293, 308 [4] [215 P.2d 93].)

Furthermore, viewed through the eyes of the trial court as evidenced by its findings, it cannot be said that Steele violated his fiduciary obligations in any part of the transactions involved. It appears that he at all times acted in highest good faith. The evidence does not show the slightest misuse of his general power of attorney, and no attack is made of any kind in that respect. His work as a broker under the contract was apparently done diligently, honestly, and in full accord with its terms. The contract itself appears to follow

ordinary business custom, mandatory advertising expenditures being consistent with and meeting the long term of the contract. In fact, reading the sum total of the evidence of Steele's work on the contract, it is easily possible that had Steele been paid on an hourly, daily or monthly basis for his work, his earnings would have been far greater than under the commission compensation agreed upon. Thus it may well be possible that Thurston, in fact, secured the advantage of the bargain.

The only real complaint is that Thurston either signed the contract without knowing the description included the whole 154 acres, or that he was incompetent by reason of mental illness or ignorance of facts to understand clearly the contract he was signing. As hereinbefore pointed out, however, the court's findings on all these matters were contrary to appellants' contentions and such findings were adequately supported by the evidence and the inferences clearly deducible therefrom. This is not a case of the gift of the property without valuable consideration. It is a case in which the evidence, fairly read, sufficiently shows that the parties, after lengthy consideration and substantial discussion, entered into a reasonable businesslike contract for the rendition of personal service in the sale of real property by a duly licensed real estate broker, and that the broker honestly and fairly lived up to the terms of the contract.

The principles of fiduciary relationship enumerated in the authorities cited by appellants might well be persuasive had the evidence been viewed by the trial court through the eyes of appellants. But it did not do so and its material, ultimate findings have ample evidentiary support.

### Evidence Clear and Convincing

There is some intimation in appellants' brief that Steele ought to have freed himself, before the trial court, of any presumption of unfairness by clear and convincing proof, and that in some way the appellate court should reweigh the evidence on the question of its being clear and convincing. The trial court quite apparently took the view that the contract was not unfair and that the transaction was entered into voluntarily, freely and with full understanding of the facts.

The "clear and convincing evidence" rule is one for the guidance of the trial court. Whether or not the evidence was clear and convincing is for that court to decide. Even if the evidence is substantially conflicting, the appellate court

will not disturb the trial court's findings. (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [1] [147 P.2d 583]; *Helbing* v. *Helbing,* 89 Cal.App.2d 224, 229 [7] [200 P.2d 560]; *Teixeira* v. *Domingos,* 171 Cal.App.2d 196, 201 [4] [339 P.2d 863].)

We are satisfied from our examination of the entire record that the court's material findings of ultimate fact, its conclusions of law and its judgment are sufficiently supported by the evidence.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 1, 1961.