[Civ. No. 22089.   First Dist., Div. Two.   Jan. 17, 1966.]

DOUGLAS M. MacMILLAN et al., Plaintiffs and Respondents, v. PETER J. PARLATO, Defendant and Appellant.

378

Thorne, Stanton, Clopton, Herz & Stanek, William F. Stanton and John E. Thorne for Defendant and Appellant.

Volney J. Tidball for Plaintiffs and Respondents.

AGEE, J.—Defendant appeals from the judgment herein, which declares *inter alia* that he has no right, title or interest in a certain $90,000 promissory note or the deed of trust securing its payment. The facts will be stated in the light most favorable to respondents.

■ Appellant had been a licensed real estate broker for over 15 years prior to the transaction involved herein. On September 1, 1960 he obtained an option in his name, on behalf of himself and respondent MacMillan, to purchase an 18-acre parcel of land for $201,500. Each put up one-half of the $2,000 paid for the option. Appellant acknowledged MacMillan's one-half interest in a "Declaration of Trust and Agreement of Joint Venture," executed by them on September 6, 1960.

Appellant and MacMillan thereafter became doubtful of

their financial ability to carry out the purchase on their own account and, during the latter part of 1960, they brought respondents Worley, Tidball and appellant's brother, Eugene Parlato, into the venture.

It was agreed that appellant was to effect the purchase of the 18 acres and carry out all transactions connected therewith as the agent for the joint venture but in his name alone. This he did.

The option agreement of September 1, 1960 was superseded by a subsequent option agreement dated December 23, 1960. This provided that it be exercised not later than February 28, 1961, that the purchase price of $201,500 was to be paid by a payment of $48,000 in addition to the previous payment of $2,000, and the balance by installment note of $151,500, secured by deed of trust on the property. The note provided for interest at 6 percent per annum.

Prior to the execution of the December 23rd option, appellant and respondent MacMillan had been negotiating with the Alexian Brothers for the sale to them of an 8-acre portion of the subject property. An agreement for such sale was executed on December 29, 1960, subject to the exercise of said option. The sale price was $140,000, payable $50,000 before February 1, 1961 and the balance by installment note of $90,000, secured by deed of trust. Said note provided for interest at 4¼ percent per annum.

Under the Alexian agreement, the joint venture (per appellant) bound itself to exercise the December 23 option agreement and to carry out all of its provisions, including the payments of principal and interest, so as not to "jeopardize the rights" of Alexian Brothers in their 8-acre portion. The Alexian sale was completed on February 17, 1961.

The option of December 23, 1960 was thereupon exercised and the $48,000 called for thereunder was paid out of the $50,000 received from the Alexian Brothers. This left the joint venture with 10 acres, the Alexian note for $90,000 and the deed of trust on the 8 acres sold, all of which stood in the name of appellant.

In the latter part of February 1961, the five joint venturers met and executed a formal "Joint Venture Agreement."[1] Until then their agreement had been entirely oral.

[1]This seven-page agreement includes many provisions not pertinent herein, such as death, bankruptcy or incompetency of a joint venturer, transfers of interest in the venture, and other such matters normally included in a formal joint venture agreement.

By consent of all parties the written agreement was dated August 6, 1960. This was apparently done for tax purposes, as it was in that month that appellant and respondent MacMillan first commenced their efforts that led up to the formation of the joint venture.

The agreement describes the 18 acres by metes and bounds and the appointment of appellant "to act as nominee, agent and trustee of the joint venture" and recites that "he is also acquiring a participating interest in this joint venture on his own account."

It further provides as follows: "Since it is anticipated that each of the parties hereto shall render services to the group from time to time, it is agreed that the said trustee and agent shall not receive compensation for services rendered by him under this agreement, other than the normal profits he may make as a result of his participation as a joint venturer herein."

Clause 3 of the agreement reads as follows:

"3. PARTICIPATION RIGHTS: The joint venturers hereby agree that each will own the real property and any leases executed thereunder, and participate in the expenses and profits of the venture, as follows:

| | |
|---|---|
| PETER J. PARLATO | 10% |
| DOUGLAS MACMILLAN | 40% |
| EUGENE PARLATO | 23% |
| THEODORE C. WORLEY | 23% |
| VOLNEY J. TIDBALL | 4% |

"For voting purposes, each joint venturer shall be entitled to one (1) vote for each one per cent held."

The testimony is that the foregoing percentages were computed after full discussion between the joint venturers and were based upon the willingness and financial ability of each to meet the obligations of the joint venture.[2]

In relation thereto, the agreement further provides:

"8. OBLIGATIONS OF THE PARTIES: Each of the parties hereto enters into this agreement voluntarily and understands that there are to be payments of principal, interest, taxes, etc., that will be required to be made from time to time in connec-

[2]The first assessment of the joint venturers was made in February 1962. It was in the total amount of $6,155 and was for the purpose of paying real property taxes and the interest differential between the purchase note of $151,500 and the Alexian note of $90,000.

tion with the venture. Each party therefore agrees that he will pay his proportionate share thereof into the venture treasury, according to his participation rights hereunder at least ten (10) days before said obligation becomes due." Then follow provisions applicable in the event of the failure of a joint venturer to meet such an obligation.

The agreement further provides as follows: "Within ninety (90) days after the conveyance of title to said property to said agent and trustee, agent and trustee will execute a conveyance of said title to an escrow agent or trustee designated by a majority vote of percentages of interest, for the purpose of holding legal title to said property for and on account of each party [to the joint venture] . . . ."

Appellant subsequently deeded the remaining 10 acres to the Surety Title & Guaranty Company to hold for the joint venture in accordance with a holding agreement executed contemporaneously therewith. He also executed and delivered an assignment of the $90,000 Alexian note and deed of trust to the same title company.

In this assignment appellant acknowledges that he "accepted and is now holding" the note and deed of trust "as agent and trustee for the joint venturers under that Joint Venture Agreement dated August 6, 1960," and that "Surety Title & Guaranty Company is hereby authorized and directed to hold title to said instruments for the beneficial interest of said Joint Venturers."

The assignment was executed on February 5, 1962. By that time, appellant had sold in various proportions his entire ten percent interest in the joint venture, the last one percent thereof being sold to respondent Eugene Parlato, his brother.

This action against appellant was filed by respondents on November 2, 1962, after they learned that he was claiming that the Alexian note and deed of trust belonged to him and not the joint venture.

On the record before us and considering his many years of experience as a real estate broker dealing in joint venture real estate transactions, as the testimony shows, it seems almost incredible that appellant should make such a claim. We therefore agree with the statement of the learned trial judge that "this contention of defendant Peter Parlato is unfounded."

Appellant admitted that the conference in February 1961, at which time the formal joint venture agreement was exe-

cuted, lasted a "good hour" but that he never mentioned to anyone there that he should have the Alexian note for himself.

Appellant's counsel offers the following to us: "The most reasonable explanation of appellant Parlato's conduct is that he was mistaken in fact. That is, Parlato believed that the written joint venture agreement only applied to the remaining 10 acres, and not to the 8 acres sold to Alexian Brothers and for which Parlato, as sole payee, received the $90,000 note."

The trial court made express findings contrary to this "explanation." It found that appellant entered into the joint venture "without any fraud or undue influence being present or exercised over him" and that "he did execute said instruments, documents and assignments without any fraud or undue influence being exercised over him, and with a full awareness of the nature of his actions and the legal consequences thereof."

The trial court further found that appellant "received adequate legal consideration for entering into the joint venture and for the surrender to the joint venture of any existing rights he may have had at the time the joint venture was entered into."

These findings are not only supported by substantial evidence but by the overwhelming weight of the evidence.

▮▮▮ Appellant calls attention to the fact that, in addition to being coventurers, respondent Worley is a certified public accountant and respondent Tidball is an attorney at law. His counsel states that "we are confronted with two advisors subject to a confidential relationship toward appellant Parlato permitting him to sign a joint venture agreement when he had no copy before him to read." (This refers to the meeting at which the agreement dated August 6, 1960 was discussed and signed by all of the parties thereto.)

The trial court was well aware of this relationship. It expressly found as follows: "Throughout the joint venture the plaintiff Tidball acted as attorney for the joint venture as well as being a participant therein. Throughout the joint venture the plaintiff Theodore C. Worley acted as tax consultant for the joint venture and was a participant in it."

Nevertheless, appellant makes the following statement: "The Court below erred in not placing the burden of proof upon both respondents Worley and Tidball to demonstrate that they had not breached their fiduciary duty to appellant

Parlato by failing to make an honest and reasonable effort to explain to Parlato the meaning and consequences of the written joint venture agreement which significantly diminished Parlato's interest and reasonably expected gain, while increasing the interests of Worley and Tidball.''

There is nothing in the record to support an assumption that the trial court did not place the burden of proof upon respondents to establish that the joint venture agreement was valid and binding upon appellant. The issue was necessarily raised by the respondents' complaint. The relationship between the parties was part of the evidence to be considered by the court in determining such issue and arriving at its decision.

The following language in *Bank of America* v. *Steele,* 188 Cal.App.2d 62, 67-68 [10 Cal.Rptr. 205] is directly applicable herein:

''There is some intimation in appellants' brief that Steele [fiduciary] ought to have freed himself, before the trial court, of any presumption of unfairness by clear and convincing proof, and that in some way the appellate court should reweigh the evidence on the question of its being clear and convincing. The trial court quite apparently took the view that the contract was not unfair and that the transaction was entered into voluntarily, freely and with full understanding of the facts.

''The 'clear and convincing evidence' rule is one for the guidance of the trial court. Whether or not the evidence was clear and convincing is for that court to decide. Even if the evidence is substantially conflicting, the appellate court will not disturb the trial court's findings. [Citations.]

''We are satisfied from our examination of the entire record that the court's material findings of ultimate fact, its conclusions of law and its judgment are sufficiently supported by the evidence.''

Judgment affirmed. The purported appeal from ''all Orders of the Court'' and the order denying motion for new trial is dismissed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied February 16, 1966, and appellant's petition for a hearing by the Supreme Court was denied March 16, 1966.