[Civ. No. 7047.  Third Dist.  Apr. 28, 1944.]

MARYLAND CASUALTY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and HARRY BALDWIN, Respondents.

Leonard & Hanna for Appellant.

E. A. Corten for Respondents.

THOMPSON, J.—This is a petition by Maryland Casualty Company, the insurer of A. Brizard, a corporation, to annul the award of the Industrial Accident Commission, rendered on rehearing, in favor of Harry Baldwin for permanent injury to his back sustained in the course of his employment.

This petitioner contends the record contains no evidence that the workman's present disability resulted from the injury to his back, and that all of the medical experts agreed his present ailment is a manifestation of latent arthritis which was not caused by said injury.

Harry Baldwin was employed by A. Brizard, a corporation, as a sheet metal worker. The Maryland Casualty Company was the insurer. July 12, 1939, Baldwin, who was then forty-nine years of age, while engaged beneath the ground floor of a dwelling house at Loleta, in installing a furnace, twisted his back, resulting in sharp pain and an injury to the lower portion of his spine. He remained at home in Arcata for about a week on account of the injury, reporting his condition to Doctor D. N. McInturff. The doctor examined him on July 13th, finding that he had "pain over the lumbosacral area, spasm particularly of the muscles of the left part of the back that extend down to the hip." Baldwin returned to his work in about one week, doing "what I could," but suffered from severe pain "between the hip and small of my back." He visited the office of Doctor McInturff several times within a few weeks following the accident. The doctor assumed he might be afflicted with sciatica and took X-ray pictures of his spine and concluded "that his disability was from the original injury." He "was getting progressively worse." At the time of the original hearing in April, 1940, the doctor testified that Baldwin had not then "completely recovered." When asked if the injury was permanent or temporary, he replied, "It is impossible to state. People in this age group don't get better because of their

age and the tendons become more fixed and tend to mobilize the spine. He should improve but I can't say whether he ever will be completely all right." He said the sciatica resulted from the injury to the back. Regarding that conclusion this colloquy occurred:

"Q. . . . Your conclusion is from the whole thing, Doctor, that this sciatica was a result of the original injury which he gave you a history of when he first came to see you in July? A. Yes."

The testimony of Baldwin adequately supports the theory that his disability originated from the injury to his back which was sustained in the course of his employment. He testified to continuing pains and soreness in the locality of the injury sustained to his back.

An examination of the workman by Doctor Callander, five months after the accident occurred, disclosed that he then suffered "pain down left side" and a "sore spot at the inferior gluteal fold, left buttock." The doctor did report that "the spine seems fairly normal throughout" and that X-ray pictures disclose "no evidence of recent bone injury." He then concluded "There should be no permanent disability."

Upon that showing, based on conflicting evidence, the commission adopted findings in May, 1940, holding that the injury caused "total temporary disability" from October 31, 1939, to January 1, 1940, and awarded him compensation accordingly.

Mr. Baldwin returned to his work in January, 1940, but became a member of a partnership, and performed only light work. He continued to suffer from severe pain in his back and down the left leg. In April, 1943, he filed an application pursuant to section 5410 of the Labor Code, for "new and further disability" caused by the prior injury to his back. At that hearing the evidence of the former proceeding was received, and Mr. Baldwin fully and elaborately testified to the entire history of his injury to the back and continued disability on that account. The former reports of the physicians were also before the commission on the last mentioned hearing. Pursuant to section 5303 of the Labor Code. the commission considered the entire evidence of both hearings. The testimony of Baldwin adequately supports the conclusion that his present disability is the result of his injury to the back, or at least that his ailment was exacerbated on that account.

Upon the foregoing evidence the commission amended its former findings determining that Harry Baldwin sustained an injury to his back on July 12, 1939, in the course of his employment by A. Brizard, which caused "permanent disability" to the extent of 30½ per cent thereof, entitling him to an award of $25 per week for 122 weeks, amounting to $3,050 against Maryland Casualty Company, the insurer of said employer, with credit for all sums previously paid on account of said injury. On petition of said insurer, a rehearing was granted on October 14, 1943. Upon further hearing, after due notice, the commission readopted its last mentioned findings on November 2, 1943, adding a further award for payment of future necessary medical treatment "to cure and/or relieve applicant from the effects of aforesaid injury."

This petition for a writ of review was then filed.

The Maryland Casualty Company contends that the record contains no evidence supporting the findings of the commission that the workman's permanent disability resulted from the injury to his back, which was sustained by him while installing a furnace beneath the ground floor of a dwelling house on July 12, 1939, and that the expert medical testimony is uncontradicted that his ailment is "entirely ascribable to non-industrial, chronic, infectious pathology." It is also asserted that when the cause of a chronic ailment is not within the common knowledge of nonexpert witnesses that cause requires the evidence of scientific medical experts to support a valid finding to that effect.

It is true, as contended by the petitioner, that the Industrial Accident Commission has no jurisdiction to make a finding and award in the absence of competent evidence to support them. (*Hartford Acc. & Indemnity Co.* v. *Industrial Acc. Com.*, 140 Cal.App. 482 [35 P.2d 366].) The generally approved rule is that when the cause of an ailment is solely within the scientific knowledge of medical expert witnesses, and not within the common knowledge of nonexpert witnesses, medical expert testimony is ordinarily controlling over a layman's mere opinion in that regard. (*Pacific Employers Ins. Co.* v. *Industrial Acc. Com.*, 47 Cal.App.2d 494 [118 P.2d 334]; *William Simpson Construction Co.* v. *Industrial Acc. Com.*, 74 Cal.App. 239 [240 P. 58]; 20 Am.Jur. 719, §§ 858, 859; 1 Campbell's Workmen's Compensation, p. 939, § 1082.) In the text last cited it is said:

"When the question is one within the knowledge of experts only, their testimony is conclusive. This is best illustrated by the question as the cause of designated pathology, and what is or is not either proper or usual practice in the treatment of disease. The rule does not apply to facts which may be ascertained by the use of the senses of the nonexpert, nor to those facts which inspection by nonexperts would disclose."

The weight to be given to expert medical testimony is within the sound discretion of the fact finding tribunal. The law makes no distinction in that regard between the testimony of expert and nonexpert witnesses. (*State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 195 Cal. 174, 184 [231 P. 996]; *Arais* v. *Kalensnikoff*, 10 Cal.2d 428, 432 [74 P.2d 1043, 115 A.L.R. 163]; *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 654 [122 P.2d 576].)

In the present case we are of the opinion there is sufficient medical expert evidence to support the findings and award of the commission that the disability of Baldwin, which continued to the time of the last hearing four years after the injury to his back was sustained, was attributable to that cause. There is a conflict in the evidence of Doctor McInturff and that of Doctor Callander. While the latter physician did say "I feel that there is no permanent disability due to trauma" and in his later report of March, 1943, he said, "I think that now any effects of his trauma has worn off. . . . I think that he has no disability at the present time." On the contrary, Doctor McInturff testified that the pain and disability from which he was then suffering, and which the evidence shows continued to the time of the final hearing, was caused "from the original injury" and that "he was getting progressively worse." He finally concluded that Baldwin was afflicted with sciatica, which was caused by the original injury. Assuming, as the commission had a right to, that Baldwin was suffering from sciatica, neuritis or traumatic neurasthenia, caused by inflammation of the sciatic nerve or other nerve fibers, the determination of which required scientific medical diagnosis which would be conclusive under the circumstances of this case, still there is some medical testimony in this case to support the conclusion that the chronic ailment was caused by the injury to his back. We must concede this proceeding presents a close case dependent on technical scientific knowledge. It might have been more

satisfactory if the examinations of Doctor McInturff had covered the period of time to the date of the last hearing. But since he did testify that the ailment was growing "progressively worse" and that it originated from the injury to his back, we may not hold there is no expert testimony to support the findings and award of the commission with respect to the cause of his disability.

The award is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 25, 1944.