[Civ. No. 13817.   First Dist., Div. Two.   Dec. 20, 1948.]

JENNIE HELBING, an Incompetent Person, etc., Appellant, v. HAROLD HELBING et al., Respondents.

(Two Cases.)

Joseph A. Brown for Appellant.

Sherman.& Peters for Respondents.

DOOLING, J.—Plaintiff Jennie Helbing is the mother of defendant Harold Helbing and defendant Neva Helbing is Harold's wife. Plaintiff appeals from judgments in favor of defendants in two suits in equity in which she attacked three transfers of property from herself to defendants. The two suits are consolidated for trial. The first transfer attacked is the sale to defendants by plaintiff of a parcel of real property in San Francisco in 1941 for an agreed price of $17,500. The second transfer attacked is the sale of another parcel of real property, also in San Francisco, to defendants by plaintiff on May 11, 1943, for an agreed price of $100,000. The second action involves the gift by plaintiff to defendants of an automobile, also in 1943. The original complaints filed respectively in September and December of 1943 were verified by plaintiff and filed by her personally without the intervention of a guardian. On April 30, 1945 Jennie Perry, a daughter of plaintiff, was appointed her guardian *ad litem* and the subsequent proceedings were prosecuted through the guardian. Later Jennie Perry was appointed the general guardian of appellant.

Appellant Jennie Helbing, who was born in 1866, is and for many years has been a widow with several adult children. She had rather extensive holdings in real property including the two parcels involved in this appeal. The children were apparently all more or less associated with their mother in her business affairs. In 1938, she advised the other children that the respondent Harold was to collect her rents in San Francisco and to supervise the keeping of her accounts, and from that time until the latter part of 1943 Harold acted in this capacity to the exclusion of the other children. The extent of his management of her properties and business is in dispute but we will consider this appeal on the basis of the fact that Harold was acting as his mother's agent at the time of the three transactions in question. An agent is held to the

highest good faith in his dealings with his principal and it is appellant's position that respondents did not produce substantial evidence to rebut the presumption of fraud and undue influence which the proof of this relationship cast on them.

█ It is not the rule that an agent cannot acquire property from his principal. An agent is held to the standards of conduct of a trustee (Civ. Code, § 2322) and, the agency being established, a presumption arises that he obtained an undue advantage over his principal in the acquisition of the principal's property. To rebut this presumption the agent must establish "that he acted in perfect good faith, revealed all material facts, and paid an adequate consideration" (1 Cal.Jur. 801), but these facts being proved "[t]here is no inhibition upon a purchase by an agent from his principal" (1 Cal.Jur. 800).

█ It is claimed that there is no substantial evidence to support the court's finding that at the time of the transactions involved appellant was "entirely competent and had full knowledge and understanding of the effect and import of said transactions." The personal physician of appellant testified that following a physical injury suffered in January, 1942, appellant had progressively deteriorated mentally and that in his opinion she was unable to transact business as a normal person would in 1943. On cross-examination this witness stated: "I would have to confess I know very little about her activity in a business way," and that he did not know of his own knowledge whether she would be able to identify a deed excepting recently. (His testimony was given in December, 1945.) Other witnesses testified to conduct of appellant that would indicate a confusion and lack of comprehension which would incapacitate her from understanding business transactions. Opposed to this is the testimony of a banker with whom she attempted to negotiate a loan just before the sale of her property to respondents in 1943 and an agent of the title company which handled the two real estate transfers, who both testified that from their conversations with her at those times she appeared to have a complete understanding of the details of the transactions; the testimony of the manager of the apartment house which was purchased by respondents in 1943 that up to the time of the transfer appellant personally supervised her in the management of the apartment, visited the apartment five or six times a week and discussed the details of its operation

with the witness, and that from her dealings with appellant and her observation of her in her opinion she was a person of normal understanding and abilities; and the testimony of respondents as to their dealings and conversations with her which gave a picture of an experienced business woman with a grasp and understanding of the details of her business affairs. We cannot agree with appellant that the evidence of appellant's competency and understanding is not substantial. While the only medical opinion was that of her physician that appellant was unable to understand business affairs after 1942, his testimony was not only weakened by his cross-examination but was contradicted by the testimony of the lay witnesses called by respondents. ■ The weight to be given to expert medical evidence is for the court or jury and it may be controverted by lay testimony establishing inconsistent facts. (*Arais* v. *Kalensnikoff*, 10 Cal.2d 428, 432 [74 P.2d 1043, 115 A.L.R. 163]; *Cloud* v. *Market Street Ry. Co.*, 74 Cal.App. 2d 92, 97 [168 P.2d 191]; *Maryland Cas. Co.* v. *Industrial Acc. Com.*, 64 Cal.App.2d 162, 166 [148 P.2d 95].) Appellant claims that the apartment house manager was so impeached as to destroy the value of her testimony but the credit to be given to any witness is peculiarly a question for the trial court.

■ The finding that it is not true that respondents acquired either parcel of real property "at a price substantially less than the fair market value" is likewise attacked. Two experts testified respectively that in their opinion the property purchased in 1941 for $17,500 had at that time a fair market value of $23,500 and $25,000. On cross-examination they admitted that they had not examined the building in that year. The evidence shows that shortly before its purchase the building which was very old had been condemned by the San Francisco Board of Health and that respondents to satisfy the board of health had been compelled after its acquisition to make structural alterations and repairs and to change the character of its use. As to the apartment house property purchased in 1943 for $100,000 experts for appellant fixed its value in 1943 at from $122,500 to $130,000. They had not examined the property in that year. Counsel stipulated that a bank appraiser who had appraised the property in 1943 would testify if called that he fixed its value at that time at $100,000 for loan purposes. ■ The question of adequacy of consideration "is always peculiarly a question of fact for the trial court to determine, in the light of all the facts and circumstances of each particular case."

(*Boulenger* v. *Morrison,* 88 Cal.App. 664, 669 [264 P. 256] ; *Estate of Brix,* 181 Cal. 667, 674-5 [186 P. 135] ; *Schader* v. *White,* 173 Cal. 441, 446 [160 P. 557] ; *Page* v. *Brown,* 122 Cal. App. 12, 18-19 [9 P.2d 895] ; *Cushing* v. *Levi,* 117 Cal.App. 94, 102-3 [3 P.2d 958].) We cannot say that the finding of adequate consideration does not find substantial support in the evidence.

▉ Counsel cites cases which contain language indicating that the lack of independent advice alone is sufficient to invalidate a transaction between fiduciaries. Whatever may have been said in that connection in these cases the rule is now settled that proof of independent advice is not indispensable and its absence is only one of the circumstances to be considered by the court. (*Smith* v. *Lombard,* 201 Cal. 518, 524 [258 P. 55] ; *Brown* v. *Canadian Indus. Alcohol Co.,* 209 Cal. 596, 599 [289 P. 613] ; *Burnham* v. *Witt,* 217 Cal. 397 [18 P.2d 949] ; *Combs* v. *Combs,* 75 Cal.App.2d 903 [171 P.2d 949] ; *Stevens* v. *Hutton,* 71 Cal.App.2d 676, 683 [163 P.2d 479] ; *Macaulay* v. *Booth,* 53 Cal.App.2d 757, 760 [128 P.2d 386] ; *In re Hill,* 13 Cal.App.2d 326, 329 [57 P.2d 155].)

▉ If, as appellant argues, the evidence to rebut the presumption of unfairness in an agent's transactions with his principal must be clear and convincing, it has been decided that the clear and convincing evidence rule is one for the guidance of the trial court and all that is required on appeal is that the findings of the trial court find substantial support in the evidence. (*Viner* v. *Untrecht,* 26 Cal.2d 261, 267 [158 P.2d 3] ; *Stromerson* v. *Averill,* 22 Cal.2d 808, 815 [141 P.2d 732].)

The attack on the findings that the three transactions were not induced by fraud or undue influence, or any breach of the confidential relation existing, necessitates a somewhat more detailed recital of the evidence with regard to each. Concerning the property purchased in 1941 respondent Harold Helbing testified that his mother received a letter from the chief housing inspector of the board of health in January, 1941, stating that the building was in bad repair and was being maintained in violation of certain state laws and city and county ordinances and demanding that it be vacated in 30 days and promptly put in a safe and sanitary condition, and this letter is in evidence. The witness further testified that his mother, on receipt of this letter, inspected the building and after such inspection said to him: "I didn't realize it was in such a terrible condition." She had recently received

an offer of $11,000 for this property and stated to the witness that some members of the family thought that she should sell it. The witness told her that in his opinion it was worth more and she replied: "Why don't you take it and fix it up?" After some considerable discussion the witness agreed to pay $17,500 for it and his mother replied: "You maybe can do something with it. It doesn't look very good to me."

To rebut the presumption of undue advantage arising from the fact of agency the agent must establish that he has acted in perfect good faith and concealed no material facts from his principal. (1 Cal.Jur. 801.) ██ Where the evidence is substantial the trial court's determination that the burden of establishing good faith has been met by the agent is conclusive on appeal. (*Schurman* v. *Look*, 63 Cal.App. 347, 355 [218 P. 624]; *Heney* v. *Heney*, 80 Cal.App. 301, 316 [251 P. 841]; *In re Bauer*, 17 Cal.App.2d 426, 430 [62 P.2d 150]; *Malinow* v. *Dorenbaum*, 51 Cal.App.2d 645, 652 [125 P.2d 554]; *Azevedo* v. *Leavitt*, 76 Cal.App.2d 321, 324 [172 P.2d 704].) ██ The finding of the trial court as to the fairness of this transaction finds substantial support in the evidence.

██ Turning to the 1943 purchase, the evidence shows that the property was covered by a mortgage to secure the payment of a balance of $73,000. The mortgagee demanded payment. Appellant attempted to secure a new mortgage for that amount from a bank but the bank's appraiser appraised the property at $100,000 and the bank would only lend her 60 per cent of this amount or $60,000. The banker suggested that she put a blanket mortgage on all of her San Francisco real estate but this she was unwilling to do. She suggested to Harold that she would give him this property but he refused to take it as a gift. She then proposed that he buy it from her and he refused this suggestion several times. The price of $100,000 was proposed by appellant and respondents finally agreed to purchase at that price. This again presents a question for the trial court which that court has resolved in respondents' favor. Appellant suggests that Harold knew that the property would appreciate in value and should have informed his mother of that fact, but fairly read the testimony of Harold amounts to no more than that he believed that if he managed the properties carefully he could make a fair return on his investment. The fact that the properties did subsequently increase in value does not affect the fairness of the transactions at the time that the properties were purchased. It should also be noted that Harold was his mother's agent

in managing the property. He had no agency to sell it and it does not appear that his knowledge of its value was superior to hers.

The testimony of both respondents as to the gift of the automobile is that appellant frequently offered to give it to them and they finally accepted it. ▌ An agent is not forbidden to accept a gift from his principal. (*Hemenway* v. *Abbott*, 8 Cal.App. 450, 462 [97 P. 190]; 3 Pomeroy's Equity Jurisprudence (5th ed.) § 959c, p. 828; Restatement of the Law of Trusts § 217, com. on subsec. (2e), p. 619.) Indeed in many of the cases in this state on the subject of dealings between fiduciaries gifts have been sustained. (*Soberanes* v. *Soberanes*, 97 Cal. 140 [31 P. 910, 17 L.R.A. 301]; *De Arellanes* v. *Arellanes*, 151 Cal. 443 [90 P. 1059]; *Zihn* v. *Zihn*, 153 Cal. 405 [95 P. 868]; *Combs* v. *Combs, supra,* 75 Cal. App.2d 903; *Azevedo* v. *Leavitt, supra,* 76 Cal.App.2d 321.)

▌ The evidence supports a finding of the voluntary and unsolicited gift of a secondhand automobile by a wealthy mother to a son and daughter-in-law with whom she was on very intimate and affectionate terms. It supports the court's conclusion that there was no unfairness or overreaching. Such a transaction is neither void nor voidable.

We do not find support in the record for appellant's claim that the consideration "was a feigned consideration." The balance due to appellant on the 1941 transaction was secured by a mortgage and has been fully paid. The balance due on the 1943 transaction is likewise secured by a mortgage and respondents are bound to pay $400 per month, paid that amount monthly to appellant until acceptance of further instalments was refused and tendered the full amount of accrued and unpaid instalments at the trial of the action.

Judgments affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied January 19, 1949, and appellant's petition for a hearing by the Supreme Court was denied February 17, 1949.