[L. A. No. 19404.    In Bank.    Feb. 7, 1950.]

THE PEOPLE, Respondent, v. CITY OF LOS ANGELES et al., Appellants.

Ray L. Chesebro, City Attorney Gilmore Tillman, Chief Assistant City Attorney, C. T. Waldo, Assistant City Attorney, Cecil A. Borden, Deputy City Attorney, and A. E. Chandler for Appellants.

Fred N. Howser, Attorney General, Walter L. Bowers, Assistant Attorney General, and Burdette J. Daniels, Deputy Attorney General, for Respondent.

TRAYNOR, J.—In 1913, defendant city of Los Angeles completed its aqueduct to the Owens River, which previously emptied into Owens Lake, a salt-water lake without outlet. The city completed in 1939 an extension of its aqueduct system into the Mono Basin watershed and in 1941 its Long Valley Dam at the upper end of Owens Valley. From 1919 to 1937 it diverted virtually all the flow of the Owens River into its aqueduct above Owens Lake. By 1921 the lake was dry and remained so until 1937; as a consequence valuable mineral deposits in the bed of the lake were made available. In 1937, 1938, and 1939, the city released large quantities of water onto the lake bed, causing extensive damage to the mineral deposits and chemical plants located on the lake bed. In 1939, the state, as owner of the lake bed, brought this action for an injunction to define the extent to which the city may release water onto the lake bed. The trial court granted an injunction and the city has appealed.

The judgment entered enjoins the city from:

"(1) Diverting any or all waters from the Mono Basin watershed or waters partially comprised of, or augmented by

said foreign Mono waters, out of defendants' aqueduct system into or onto Owens Lake, Inyo County, California, or in any way releasing such foreign Mono waters from the Mono Basin watershed, or waters partially comprising of or augmented by said foreign Mono waters, to be deposited into or onto said Owens Lake;

"(2) Diverting any or all waters of the Owens River and its tributaries out of defendants' aqueduct system onto Owens Lake, Inyo County, California, or in any way releasing waters of said Owens River, or its tributaries to be deposited into or onto said Owens Lake, which are not in excess of an amount equal to the reasonable capacity of defendants' aqueduct system and all of its component facilities reasonably operated.''

The principles governing the disposition of this case were set forth in *Natural Soda Products Co.* v. *City of Los Angeles,* 23 Cal.2d 193 [143 P.2d 12]. In that case a lessee of mineral rights from the state secured a judgment for damages against the city for the damage to its chemical plant and business caused by the flooding of Owens Lake in 1937. It was there held that by its long continued diversion of water from Owens River the city had obligated itself to continue that diversion within the reasonable capacity of its aqueduct system for the benefit of those who had reasonably relied on such diversion in undertaking the development of the mineral resources of the lake bed. In the present case it is necessary to decide whether the city's obligation can be enforced by injunction, and if so, to determine the extent of the injunction.

The city contends that no injunction should issue because a public use has attached to the release of water from the aqueduct system onto Owens Lake, and that therefore the state's relief should be limited to damages. If an injunction framed with reference to the legal rights of the parties would not place an undue burden on the operation of the aqueduct system, it cannot reasonably be held that a public use has attached to the release of waters to be enjoined. (*City of Lodi* v. *East Bay Mun. Utility Dist.,* 7 Cal.2d 316, 345 [60 P.2d 439].) It is therefore necessary to consider the rights of the parties in 1937 as determined by the Natural Soda Products Company case and to determine how those rights have been affected by subsequent additions to the aqueduct system.

The Natural Soda Products Company case established that the city, by its long continued diversion of the waters of the Owens River, incurred an obligation to continue that diver-

sion within the reasonable capacity of its aqueduct system, at least so long as it continued to maintain its aqueduct. As between the city and the state's lessees on the lake bed such diversion was recognized as the new natural condition with respect to the waters of the Owens River.

The city's extension of its aqueduct system into the Mono Basin watershed since 1937 was necessitated by its growing population and the fact that the normal flow of the Owens River is often substantially below the capacity of the aqueduct. The Mono waters constitute an added burden on the aqueduct facilities available for diverting the waters of the river above Owens Lake. There is no problem when the total flow of the Owens River as augmented by Mono waters is less than the capacity of the aqueduct. ■ Since Mono waters, however, would not naturally flow into the Owens Valley watershed, the city is obligated not to divert them into the Owens River if the total resulting flow would exceed the capacity of its aqueduct and thus necessitate the release of water onto Owens Lake. (*Rudel* v. *Los Angeles County,* 118 Cal. 281 [50 P. 400] ; *Hellman etc. Bk.* v. *Southern Pac. Co.,* 190 Cal. 626, 634 [214 P. 46].)

■ The city contends that its Long Valley Dam, completed since 1937, cannot be considered a part of the aqueduct facilities that it is obligated to devote to the control of Owens Valley waters. With this contention we agree.

Since the city's ability to divert the flow of the Owens River was limited by the reasonable capacity of the aqueduct, those who undertook to develop the resources of the lake bed could not reasonably rely on diversion of water in excess of that capacity. By completing a new dam in 1941, the city did not increase its obligations with respect to Owens Valley waters. (*Ireland* v. *Henrylyn Irr. Dist.,* 113 Colo. 555 [160 P.2d 364, 366].) There would be no such additional obligations unless the city operated the dam long enough and in such a manner that lower owners could reasonably rely on the continuance of that operation. (*Natural Soda Prod. Co.* v. *City of Los Angeles,* 23 Cal.2d 193, 197 [143 P.2d 12].) The city did not complete its Long Valley Dam until after this action was commenced. Its use of the dam to control the waters of the Owens Valley watershed under the compulsion of the temporary restraining order gives the state and its lessees no right to rely on the city's continuing to use the dam for that purpose.

The effect of the additions to the aqueduct system since 1937 on the rights and obligations of the parties may be summarized as follows: The city remains obligated, as it was in 1937, to divert into its aqueduct system all of the flow of the Owens River not in excess of the reasonable capacity of that system exclusive of the Long Valley Dam. The city is obligated not to increase the natural flow of the Owens River by diverting into it waters of the Mono Basin watershed, if such a diversion would necessitate the release of water onto Owens Lake. The city is free to use its Long Valley Dam exclusively for the purpose of meeting its obligations with respect to Mono waters.

The enforcement of the city's obligations by injunctive relief will not place any undue burden on the operation of the aqueduct system. The city needs all the water that can be transported through its aqueduct. Moreover, it should have no difficulty in controlling the flow of Mono waters to avoid the release of water onto Owens Lake. The Mono waters enter Owens Valley through a tunnel between the Owens Valley and Mono Basin watersheds. The flow through the tunnel may be regulated, and the city has available the facilities provided by its Long Valley Dam for storing Mono waters when their addition to the natural flow of the Owens River would overtax the capacity of the aqueduct. The city also can predict with reasonable accuracy what the natural flow of the Owens River will be and can therefore determine in advance how much water it may safely divert from the Mono Basin watershed. Accordingly, an injunction prohibiting the city from augmenting the flow of the Owens River by the addition of Mono waters when such an augmentation would necessitate the release of water onto Owens Lake, will not unduly interfere with the operation of the aqueduct system.

It is clear from the trial court's opinion that it considered the city obligated to use all its aqueduct facilities, including the Long Valley Dam, primarily for the control of Owens Valley waters, and that the injunction was designed to enforce that obligation. Paragraph one prohibits the release of any waters onto Owens Lake that include waters from the Mono Basin watershed. Paragraph two prohibits the release of any waters onto Owens Lake that "are not in excess of an amount equal to the reasonable capacity of defendants' aqueduct system and all of its component facilities reasonably operated." Since the Long Valley Dam is a component facility of the aqueduct system, paragraph two errone-

ously requires the city to use that dam for the control of Owens Valley waters. Moreover, paragraph one erroneously restricts the city's right to use the Long Valley Dam for the storage of Mono waters.

The city's obligation with respect to Mono waters is not to augment the flow of the Owens River past the Long Valley Dam if such an augmentation would necessitate the release of water onto Owens Lake. If this obligation is fulfilled, it is immaterial that the waters released from the dam are comprised of both Owens Valley and Mono waters. Such a mixture of waters will occur whenever the city brings Mono waters into the Owens Valley, but so long as the city stores Owens Valley waters in its Long Valley Dam in quantities equal to the amount of Mono waters released into the Owens River, its diversion of Mono waters will have no adverse effect on Owens Lake. The injunction must therefore be modified to exclude the Long Valley Dam from the facilities that must be devoted to the control of the natural flow of the Owens River and to define the city's obligation with respect to Mono waters in terms of the effect of such waters on the natural flow of the Owens River past Long Valley Dam rather than in terms of their mere presence in the aqueduct system.

The city also seeks a clarification of the injunction with respect to the extent of its duty to spread surplus water on the 300,000 acres of land it has acquired in the Owens Valley. The city acquired these lands so that it could take for municipal use the waters formerly used on them. It states that it plans to irrigate or spread excess water above municipal needs upon these lands in quantity sufficient to restore the ground water level after periods of pumping, and to obtain such revenue from the economic use of such lands and excess water as it can without endangering the municipal water supply. It contends that it is under no obligation to spread water in excessive amounts that would waterlog the land and interfere with its economic use for agricultural purposes. As noted in the Natural Soda Products Company case, the city's conduct with respect to its Owens Valley lands was primarily aimed at taking water off the land and thus increasing the supply available for aqueduct diversion. The state and its lessees could not reasonably rely on the city's spreading water in greater amounts than could reasonably be used on the land or stored underground for future municipal uses, and the city has therefore incurred no obligation to spread water in excess of such amounts.

The judgment is modified by striking therefrom all of paragraphs one and two defining the conduct that is enjoined and inserting in lieu thereof the following:

(1) Diverting any waters out of defendants' aqueduct system onto Owens Lake, or in any way releasing any waters to be deposited into or onto Owens Lake at any time, unless the flow of water of the Owens Valley watershed is in excess of an amount equal to the reasonable capacity of defendants' aqueduct system and all of its component facilities reasonably operated. Defendants' Long Valley Dam and reservoir shall not be considered a component facility of the aqueduct system for the purposes of this paragraph. The reasonable operation contemplated herein shall not require any diversion of waters onto the defendants' lands in Owens Valley in excess of amounts that may reasonably be used on said lands or stored thereunder for future beneficial use by the defendants.

(2) Diverting or taking into defendants' aqueduct system any waters from the Mono Basin watershed if there would thereby be an increase in the flow of the Owens River past the Long Valley Dam that would necessitate the diversion of any waters from defendants' aqueduct system into or onto said Owens Lake.

As so modified the judgment is affirmed. Each side is to bear its own costs on this appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.