[Civ. No. 14700.  First Dist., Div. Two.  Feb. 26, 1952.]

NATURAL SODA PRODUCTS COMPANY (a Corporation), Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

Kenneth Ferguson, Donahue, Richards, Rowell & Gallagher and Burdette J. Daniels for Plaintiff and Appellant.

Ray L. Chesebro, City Attorney, Gilmore Tillman, Chief Assistant City Attorney, and Rex B. Goodcell, Jr., Assistant City Attorney, for Defendants and Appellants.

NOURSE, P. J.—This case revolves around a flooding of Owens Lake during the period December, 1937, to April, 1939. A previous action was brought by plaintiff as a result of a similar flooding in early 1937, in which case the Supreme Court considered the relationship of defendants' Owens Valley aqueduct system and Owens Lake. (*Natural Soda Prod. Co.* v. *City of Los Angeles*, 23 Cal.2d 193 [143 P.2d 12].) The physical situation in this case is the same as there presented.

In 1913 the defendants completed their aqueduct to Owens Valley and, from 1919 to 1937, diverted into it virtually all the flow of the Owens River, which formerly emptied into Owens Lake, a body of salt water without outlet. As a result the lake dried up making available its subsurface brines which were valuable for use in the production of soda products. Plaintiff leased mineral rights in the dry lake bed from the State of California and acquired or built on the shore of the lake two plants for use in its manufacturing process.

Plaintiff's continued operations were dependent on the absence of any substantial flow of Owens River waters into

the lake. The extent of the flow was determined primarily by the manner in which defendants operated their aqueduct system which consisted of a vast network of reservoirs, dams, canals, ditches, wells, pumps and spreading grounds. The water which comes within the perimeter of defendants' aqueduct system can be diverted onto two spreading areas in Owens Valley; taken into storage in defendants' reservoirs; transported out of the valley in the aqueduct proper, or diverted into Owens Lake. That part of the total water supply which is transported out of the valley in the aqueduct proper can be used consumptively in the city of Los Angeles; spread onto two lower spreading grounds, or spilled into the Los Angeles or Santa Clara Rivers.

Between the period February 6, 1937, and July 1, 1937, defendants intermittently diverted large amounts of water into Owens Lake, thereby flooding the lake bed to a depth of three or four feet, thus making plaintiff's lake bed properties inaccessible, and forcing a suspension of plaintiff's operations until October, 1937.

Plaintiff brought an action for the injuries to its property and loss of profits resulting from this flooding of 1937 and was awarded damages in the amount of $153,578.85. The Supreme Court affirmed, holding that defendants had, by their long continued diversion of water from Owens River, obligated themselves to continue that diversion within the reasonable capacity of their aqueduct system for the benefit of plaintiff. (*Natural Soda Prod. Co.* v. *City of Los Angeles, supra.*) That principle, in part, governs the disposition of this case.

Plaintiff was again forced to suspend operations in December, 1937, when defendants diverted additional water into the lake. These diversions continued intermittently until May, 1939, and the property remained inaccessible until late in 1940, when the lake again became dry and plaintiff resumed operations. During that period of flooding defendants diverted altogether approximately 306,000 acre feet of water into the lake.

On June 9, 1938, plaintiff filed with the defendants a claim for $157,859.21 for the damages resulting to it during the period December, 1937, through June 7, 1938, and on June 23, 1940, plaintiff filed with the defendants another claim for $597,564.87 for the damages resulting to it during the period June 7, 1938, through June 21, 1940. Upon rejection of these claims plaintiff filed two actions for damages, one for each of the claims. The actions were transferred to

Alameda County and consolidated for trial. By the complaints plaintiff alleged that defendants were negligent in not operating their aqueduct system to its reasonable capacity, and that defendants were negligent in not providing additional headwater surface storage facilities. The trial court, sitting without a jury, found that during the period December, 1937, to April, 1939, only 50,000 acre feet of water would have been diverted into Owens Lake had defendants operated their then existing aqueduct facilities to their reasonable capacity, and that defendants were not negligent in failing to provide additional headwater surface storage facilities for the accommodation of the above mentioned 50,000 acre feet. Judgment was entered awarding plaintiff $288,851.29. Cross-appeals have been taken from this judgment.

We will first consider defendants' appeal. Defendants first contend that the evidence is insufficient, as a matter of law, to support the trial court's finding that defendants failed to operate their aqueduct system to its reasonable capacity.

■ It has long been recognized that expert testimony is not only proper but also virtually indispensable in cases where the relation between the facts and results may be understood only by those with special skill or training. (*People* v. *Ellis*, 188 Cal. 682 [206 P. 753]; *Vallejo Etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545 [147 P. 238]; *Campbell* v. *Fong Wan*, 60 Cal.App.2d 553 [141 P.2d 43].) ■ It has also been held that an expert's opinion may be based on a hypothetical question, provided, of course, that the question itself is based upon the testimony or other competent evidence sufficient to prove the facts supposed. (*Estate of Higgins*, 156 Cal. 257 [104 P. 6]; *Perkins* v. *Sunset Tel. & Tel. Co.*, 155 Cal. 712 [103 P. 109]; *Martindale* v. *Atchison, T. & S. F. Ry. Co.*, 89 Cal.App.2d 400 [201 P.2d 48].) ■ And it is for the trial court to determine the weight to be given such testimony. (*Arais* v. *Kalensnikoff*, 10 Cal.2d 428 [74 P.2d 1043]; *Kershaw* v. *Tilbury*, 214 Cal. 679 [8 P.2d 109]; *Helbing* v. *Helbing*, 89 Cal.App.2d 224 [200 P.2d 560]; *Maryland Cas. Co.* v. *Industrial Acc. Com.*, 64 Cal.App.2d 162 [148 P.2d 95].)

In the present case two civil engineers whose backgrounds showed each to have spent in excess of 30 years investigating water supply and conservation problems testified in response to a hypothetical question which accurately embraced the facts of the case as proved by prior testimony and exhibits, that it was poor engineering practice on defendants' part to spill water into the Owens Lake during the period December, 1937,

to April, 1939. The record clearly shows that these opinions were arrived at after many days of concentrated study of the circumstances as documented by a multitude of graphs, charts and miscellaneous hydrographic data which were in the chest of evidence and available to the trial court as an aid in reaching its decision. The trial court obviously found the experts' opinions satisfactory and reliable, and this court is concluded thereby.

■ Defendants also urge that plaintiff's claims were not filed within the time and manner prescribed by law.

Section 376 of the Charter of Los Angeles provides that, "No suit shall be brought on any claim for money or damages against the City of Los Angeles, or any officer or board of the city, until a demand for the same has been presented, as herein provided, and rejected in whole or in part. . . . Except in those cases where a shorter period of time is otherwise provided by law, all claims for damages against the city must be presented within six (6) months after the occurrence from which the damages arose . . ." (Stats. 1927, p. 2008, 2014-2015.)

Two claims were filed in this case. The first claim was for damages accruing from the time the flooding commenced through June 7, 1938, and was filed with defendant on June 9, 1938. The second claim was for damages accruing from June 7, 1938, through June 21, 1940, and was filed with defendants on June 23, 1940. The only question here is whether the claims were filed within six months of the "occurrence from which the damages arose."

Defendants made a similar argument in the case involving the early 1937 flooding. (*Natural Soda Prod. Co.* v. *City of Los Angeles, supra*). In that case defendants diverted water into Owens Lake intermittently from February 6, 1937, to June 30, 1937. The water did not entirely disappear until some time in September, and the claim was filed on December 30th. ■ The Supreme Court there said (p. 203] : "The principal purpose of the requirement that claims be filed is to provide the city with full information concerning rights asserted against it, so that it may settle those of merit without litigation. . . . That purpose is best served if the entire sequence of events giving rise to the injury is regarded as the 'occurrence from which the damage arose,' for damages can be assessed accurately only when the sequence is completed and the total injury taken into account. Thus, in the present case the injuries continued to accumulate but were not entirely apparent so long as water remained on the lake bed . . ."

Defendants contend that under the rule of the above quoted decision the claims here were filed either too early or too late. However, that case holds only that the plaintiff might file its claim as late as six months after the flood waters dissipate. It in no way indicates that claims might not be filed at some earlier time. Just as the whole is the "occurrence," each part thereof may, at the option of the aggrieved party be the "occurrence." ■ As Mr. Justice Shenk observed in his dissenting opinion in that case, "Another very important purpose, in a case of continuing damage, such as the present one, is to give the city an opportunity to provide protection against damage by the continued acts complained of, should it deem itself liable." (*Natural Soda Prod. Co.* v. *City of Los Angeles, supra,* at p. 205.)

■ By filing the first claim plaintiff formally gave notice to the city of its injuries both past and prospective, and the second claim, as the trial court found, was filed as soon as the total damages could be ascertained with reasonable certainty. The "occurrence" giving rise to the first claim is the series of diversions from December, 1937, through June 7, 1938, and the "occurrence" giving rise to the second claim is the series of diversions from June 7, 1938, through April, 1939. Any other result would mean that had defendants kept on with their flooding of Owens Lake, the plaintiff would never have been able to file its claims for damages, and it is neither reasonable, necessary nor just to so limit the city's charter provision.

Plaintiff has cross-appealed, contending that the trial court erred in finding that defendants were not negligent in failing to construct additional headwater surface storage facilities sufficient to accommodate the 50,000 acre feet of water which would have entered Owens Lake even had defendants operated their then existing aqueduct facilities to reasonable capacity.

The court which tried the action concerning the early 1937 flooding found that defendants were negligent in this regard. The Supreme Court affirmed that judgment on other grounds, saying: "These findings are sufficient to establish liability, and it is therefore unnecessary to consider the additional finding that defendant was negligent in failing to construct sufficient headwater storage." (*Natural Soda Prod. Co.* v. *City of Los Angeles, supra,* at p. 198.)

■ Plaintiff urges that the trial court in this case should not have permitted the issue to be relitigated as the finding of negligence in the earlier action between the same parties and

involving the same issues is now conclusive. That the general rule is as argued by plaintiff is beyond dispute. (*People* v. *Skidmore*, 27 Cal. 287; *Bank of America* v. *McLaughlin Etc. Co.*, 40 Cal.App.2d 620 [105 P.2d 607].) However, the rule is not without exceptions, and where a finding is unnecessary and immaterial the rule of collateral estoppel does not operate. (15 Cal.Jur. 153 and cases there collected.)

In the present case as well as the prior case the finding in respect to negligence or a lack of it in failing to construct additional headwater surface storage facilities can have no legal bearing on the judgment rendered. In addition to the prior action between these parties, the state, as owner of the lake bed, brought an action for an injunction to define the extent to which the city might release waters into Owens Lake. (*People* v. *City of Los Angeles*, 34 Cal.2d 695, 698 [214 P.2d 1].) In that case the Supreme Court said: "The city contends that its Long Valley Dam, completed since 1937, cannot be considered a part of the aqueduct facilities that it is obligated to devote to the control of Owens Valley waters. With this contention we agree.

"Since the city's ability to divert the flow of the Owens River was limited by the reasonable capacity of the aqueduct, those who undertook to develop the resources of the lake bed *could not reasonably rely on diversion of water in excess of that capacity*." (Italics added.)

█ By that language the Supreme Court in effect said that defendants owed no duty to the holders of lake bed properties to construct additional headwater surface storage facilities. Since, as a matter of law, no duty was owed to plaintiff, the finding of negligence is without legal effect. █ To adopt the language of the Supreme Court in *Guardianship of Di Carlo*, 3 Cal.2d 225 [44 P.2d 562], the principle of res judicata "is not to be applied so rigidly as to defeat the ends of justice; there are exceptions to it, based upon important reasons of policy, and we think that this case calls for such an exception."

The judgment is affirmed.

Dooling, J., and Jones, J. pro tem., concurred.

A petition for a rehearing was denied March 27, 1952, and defendants and appellants' petition for a hearing by the Supreme Court was denied April 24, 1952. Shenk, J., was of the opinion that the petition should be granted.