**Vasil M. MARKOFF, Plaintiff,**

v.

**NEW YORK LIFE INSURANCE COMPANY, Defendant.**

**Civ. No. LV–1450 RDF.**

United States District Court,
D. Nevada.

Dec. 17, 1973.

Vasil M. Markoff, in pro. per., M. Daniel Markoff, Las Vegas, Nev., for plaintiff.

Breen, Young, Whitehead & Hoy by C. Clifton Young and David R. Belding, Reno, Nev., for defendant.

## MEMORANDUM OPINION RE CROSS MOTIONS FOR SUMMARY JUDGMENT

ROGER D. FOLEY, Chief Judge.

### FACTS

Plaintiff is pursuing, under diversity jurisdiction, a cause of action for wrongful cancellation of two life insurance policies issued by defendant on plaintiff's life, and a cause of action for the present cash value of those policies. The two life insurance policies and an income protection disability policy were issued on the basis of a single application submitted by plaintiff in 1963. Later that same year plaintiff obtained waiver of premium provisions which were added to the life insurance policies by which the defendant agreed, in exchange for an additional premium, that:

"If the Insured is totally disabled as defined below[1] and has been con-

---

1. "Total disability" is defined by the policy as: " * * * a disability, resulting from bodily injury or disease, which prevents the Insured from engaging for remuneration or profit in any and every occupation

tinuously so disabled for at least six months, the Company will waive the payment of each premium falling due after such total disability began and during its uninterrupted continuance, subject to the terms and conditions of the policy and these Waiver of Premium Benefit provisions."

A principal condition to such waiver is found in the notice of claim and proof of total disability provision:

"Before any premium is waived, written notice of claim and due proof of total disability must be given to the Company at its Home Office . . .

"The Company may require that due proof of the uninterrupted continuance of the total disability be furnished at reasonable intervals during the first two years of such disability, but thereafter such proof will not be required more often than once a year. If such proof is not furnished or if the Insured ceases to be totally disabled, premiums falling due thereafter under this policy will be payable in accordance with its terms . . ."

On June 4, 1964, plaintiff submitted a claim for total disability benefits under all three policies. The claim was accompanied by defendant's form for "Attending Physician's Statement", indicating that plaintiff, as of May of that year, was suffering from "acute thrombophlebitis". This statement was signed by Doctor Theodore Jaisk. Following submittal of this claim, it appears that plaintiff continued to pay monthly installments on the premiums for the life insurance policies for several months and then ceased such payments.

In November 1964, the defendant responded to plaintiff's claim for income protection benefits by notifying plaintiff it was rescinding the policy because of misrepresentations it had discovered plaintiff made in his application of 1963. The response, however, made no mention of the premium waiver claims also submitted by plaintiff. On December 18, 1964, defendant notified plaintiff that premium payments were due on the life insurance policies as of August 1964, and that because of residuals due plaintiff the policies would not expire until January 10, 1965. On March 3, 1965, defendant notified the plaintiff that one of the life insurance policies had expired October 28, 1964, not January 10, 1965, since a loan had been taken out on that policy. Plaintiff contests that such a loan ever occurred.

In July 1965, plaintiff filed suit in Nevada state court for damages and sums due under the income protection policy. On December 14, 1970, after 18 days of trial, the state trial court stopped the trial and entered judgment, specifically finding that plaintiff was not totally disabled during the period May 1964 to December 1970[2] and, alter-

---

or business for which he is reasonably suited by education, training or experience . . ."
This definition is virtually identical to that provided in the income protection policy for total disability other than accidental death or dismemberment, with the addition in the latter policy of language indicating "total disability" for the first sixty months must consist of a disability ". . . which continuously prevents the insured from performing any and every duty pertaining to his occupation . . ."

2. The state court referred to the portion of the definition of "total disability" in the income protection policy which is dissimilar to the definition contained in the life insurance policies (see note 1, supra) in finding that:

". . . plaintiff (Markoff) was not from May 5, 1964, to this date totally disabled so as to continuously prevent him from performing any and every duty pertaining to his occupation."
The Court also found, however, that plaintiff suffers only a "minimal disability associated with phlebitis and a circulatory syndrome in the amount of approximately 5%", that a variety of activities engaged in by plaintiff demonstrated a lack of total disability, and that "plaintiff is manifestly guilty of malingering for the purpose of convincing the Court that he is entitled to recover against the defendant." See "Exhibit A", Defendant's Motion for Summary Judgment, pp. 10–12. The Court concluded:
"That the plaintiff should be denied recovery on both causes of action of the Amended Complaint because of intentional

natively, that the application submitted by plaintiff in 1963 contained material misrepresentations by plaintiff such that the income policy was void ab initio. Markoff v. New York Life Ins. Co., Eighth Judicial District Court of the State of Nevada, December 14, 1970, Case No. A 23896. Referring only to the finding of misrepresentations, the Nevada Supreme Court affirmed the trial court's determination. Markoff v. New York Life Ins. Co., 88 Nev. 319, 497 P. 2d 904 (1972), cert. den. 409 U.S. 1064, 93 S.Ct. 572, 34 L.Ed.2d 520 (1972). While awaiting a determination by the Nevada Supreme Court on his appeal, plaintiff filed the instant action based upon the life insurance policies in Nevada state court. The case was removed to this court upon application by defendant.

Defendant contends, in his motion for summary judgment, that the findings of the Nevada trial court are binding in this case under the doctrine of collateral estoppel. Plaintiff, on the other hand, contends that defendant has waived such defenses and should be equitably estopped from asserting as a defense (1) misrepresentations, which would otherwise render the policies void, and (2) lack of total disability. Pursuant to these contentions, plaintiff also argues that there are no material issues of fact and that he is entitled to summary judgment.

### ISSUE

Should defendant (1) be considered to have waived plaintiff's application misrepresentations, and (2) be equitably estopped from asserting the defense of lack of total disability?

### CONCLUSION

As hereinafter discussed, while defendant waived the misrepresentation defense, it should not be estopped to defend on the ground of lack of total disability. Defendant thus may rely upon

the state court determination of lack of total disability under notions of collateral estoppel. Because the basic condition giving rise to the contractual obligation of defendant to waive premiums cannot, therefore, be deemed to have occurred, plaintiff's obligation to pay premiums never ceased. Hence, the policies have, by their terms, long since lapsed for failure to pay premiums. There are no genuine issues of material fact. Summary judgment should be granted to defendant.

### DISCUSSION

1. *The issue of misrepresentation in the insurance application:*

■ The same application utilized by plaintiff to obtain the instant life insurance policies was also utilized to obtain an income protection insurance policy. In the state court litigation, which dealt with the income protection policy, the trial court found that in light of numerous instances of prior medical treatment plaintiff "intentionally misstated or concealed medical information on said application" so as to induce defendant to issue insurance, and that these misrepresentations were material. The Court further found that plaintiff misrepresented his prior earnings and concealed the fact he had been rejected in applying for insurance to another company. See "Exhibit A", Defendant's Motion for Summary Judgment, pp. 3–13. From these misrepresentations, the Court concluded as a matter of law that the income protection policy "should be cancelled, rescinded, annulled and held for naught . . ." Id. at p. 13. This finding was felt to have been "amply supported" by the partial record before the Nevada Supreme Court. Markoff v. New York Life Ins. Co. (supra). Plaintiff does not contest the fact that these misrepresentations were made, neither does he contest their materiality in inducing defendant to accept the risks of insuring him. Plaintiff does contend,

---

misrepresentations, the existence of a prior medical condition contributing to his

minimal disability and absence of total disability." Id. at p. 13.

however, that because defendant continued the life insurance policies in existence, applying residuals due plaintiff to the premiums due on the policies, after defendant was deemed to have knowledge of the misrepresentations in the application, defendant should be held to have waived this defense or should be equitably estopped from asserting it. This contention has merit.

The substance of the doctrine of waiver has been stated to be:

". . . [I]f the insurer, with knowledge of facts which would bar an existing primary liability, recognizes such primary liability by treating a policy as in force, it will not thereafter be allowed to plead such facts to avoid its primary liability . . ."

16A Appleman, Insurance Law and Practice, Rev.Ed., § 9048, p. 301 (1968).

This doctrine was recognized by the Nevada Supreme Court in Violin v. Fireman's Fund Ins. Co., 81 Nev. 456, 406 P.2d 287 (1965). There the Court held that the defendant insurer waived its power to rescind an insurance contract by issuing the policy with knowledge that the insured had fraudulently misrepresented a material fact in application for insurance in stating that no company had ever refused or cancelled insurance, where four years earlier the same insurer had cancelled a policy which it had issued to the same insured covering musical instruments. On the issue of knowledge, the Court stated that the ". . . overwhelming body of authority favors the insured and holds that the insurer, as a matter of law, is chargeable with knowledge" of a misrepresentation where full information about it is present in the insurer's own files. Id., 81 Nev. at 461, 406 P.2d at 290 (citing numerous cases). Such view comports with the often repeated sentiment that forfeitures of insurance are not favored, and the courts readily seize hold of any circumstances indicating an election or intent to waive a forfeiture. See 43 Am.Jur.2d, Insurance, § 1055, p. 979,

and cases cited in n.5. In light of such sentiments, the rule of waiver has been rephrased as:

"Where an insurer or its agent has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or is wholly inconsistent with a forfeiture is a waiver thereof."

Id. at § 1094, p. 1017.

See also 16A Appleman, Insurance Law and Practice, supra, at § 9254, p. 634. The driving concern behind this doctrine is the notion that an insurer should not be permitted to treat a policy as avoided or invalid for the purpose of indemnity, and at the same time valid for the purpose of earning and receiving premiums. 43 Am.Jur.2d, supra, at § 1130, p. 1054; 16A Appleman, Insurance Law and Practice, supra, at § 9273, p. 699.

In the instant case, the plaintiff was notified of the defendant's intent to rescind the income protection policy on the ground of misrepresentation in the application at a time when the defendant was nevertheless treating the life insurance policies, issued under the same application, as valid for purposes of applying residuals due plaintiff to the policies so as to maintain them as term life insurance. Thus, defendant not only failed to rescind the policies after it is deemed to have knowledge of facts constituting fraud in the application (see Violin v. Fireman's Fund Ins. Co., supra), it in effect continued to collect premiums due under those policies. Further, defendant has not suggested that it is willing to return the premiums which plaintiff paid on these policies. ". . . [A]n insurer not tendering back premiums [can] not claim that a life policy [is] void for false answers in the application." 16A Appleman, Insurance Law and Practice, supra, at § 9304, p. 777. Thus, defendant is considered to have waived what objections it may have regarding fraud on the part of plaintiff in filling out the application for the life insurance policies. It is of no import to

this case, then, that the state court determined that there was in fact such fraud.

### 2. *The issue of lack of total disability:*

██ Although the courts of Nevada have not addressed the question, other jurisdictions have indicated that as a general rule, where disability benefits are conditioned upon the furnishing of proof, but the policy provides that benefits are to commence from the date that the disability occurs, disability is the event which creates the right of the insured to the benefits promised in the policy, and the furnishing of proof of the disability by the insured is only a prerequisite to actual receipt of such benefits. See Mutual Life Ins. Co. of New York v. Drummond, 111 F.2d 282 (8th Cir. 1940); Mutual Life Ins. Co. of New York v. Heilbronner, 116 F.2d 855 (8th Cir. 1941), cert. den. 312 U.S. 707, 61 S. Ct. 829, 85 L.Ed. 1139 (1941); Moyer v. Aetna Life Ins. Co., 39 F.Supp. 725 (M. D.Pa.1941), aff'd 126 F.2d 141 (3rd Cir. 1942); and see Love v. Northwestern Nat. Life Ins. Co., 119 F.2d 251 (5th Cir. 1941). Such is the case under the instant policies.[3] In determining the issues presented in the income protection policy litigation, the state court alternatively held that plaintiff was not totally disabled, that he was only minimally disabled in the amount of 5% by phlebitis.[4] Hence, plaintiff's right to waiver of premiums was never created because he was never totally disabled, and his obligation to pay premiums never ceased. The policies thus lapsed for failure to pay premiums whether the residuals ran out on January 10, 1965, or October 28, 1964.

In an effort to avoid the above conclusion, the plaintiff advances the following arguments as justification for barring defendant from relying upon the state court determination of lack of total disability:

██ First, plaintiff argues that application of the doctrine of res judicata or collateral estoppel to the issue of disability is inappropriate because of a lack of "mutuality." It is not clear what plaintiff is arguing. The principle of "mutuality of estoppel" is that a judgment which is not conclusive as to facts and law as against a party to a lawsuit shall not be so considered as to his adversary. Kirby v. Pennsylvania R. Co., 188 F.2d 793, 797 (3rd Cir. 1951). Phrased differently, a litigant may invoke the bar of the prior judgment only if he would have been bound by it had it gone the other way. Keith v. Schiefen-Stockham Ins. Agency, Inc., 209 Kan. 537, 498 P.2d 265 (1972). This requirement is principally applied in those jurisdictions demanding identity of parties when one not a party or privy in the prior action seeks to assert res judicata or collateral estoppel in a later action founded upon the same issue or subject matter. Because that person was not bound by the prior adjudication, he will not be allowed to rely upon it. (The California rule is different, cf. Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892.) Here, no such problem is presented; the parties to this suit are identical to the parties in the state court action. Plaintiff may be arguing that because the finding of a lack of total disability was an alternative holding, it should not be given collateral estoppel effect. However, "(t)he judgment in a case involving two or more issues is treated as conclusive upon all of them, where all are decided in favor of the same litigant and the judgment rests upon them jointly, since the decision of one issue in such case is no less necessary or material than the decision of the other." 46 Am.Jur.2d, Judgments, § 427, p. 598. Plaintiff may be arguing that in deciding the issue of "total disability" the state court utilized a different definition of that term than is em-

3. See text accompanying note 1, supra. The condition within the policy that the insured be continuously disabled for at least six months is immaterial to the analysis here presented and therefore will not be discussed.

4. See note 2, supra, and accompanying text.

ployed in the life insurance policies. With 60 months elapsed, however, the trial court's determination likely involved a finding which encompassed the broader definition found in the income protection policy, a definition identical to that contained in the life insurance policies.[5] In any event, the trial court specifically found that plaintiff was disabled to the extent of only 5%. This material issue of fact, decided in the prior litigation, is conclusive under either of the definitions used to delineate "total disability." Finally, plaintiff may be arguing that because the Nevada Supreme Court, in affirming generally the decision below, referred only to the misrepresentation issue, the lower court's determination of the total disability issue should not be given collateral estoppel effect. The jurisdictions are divided on this question. See Annotation, 157 A.L.R. 1038, 1045–1049; 46 Am.Jur.2d, Judgments, § 463, p. 631. Although Nevada has not resolved this question, the California position, and apparently the better view, is that even if the appellate court refrains from considering one of the grounds upon which the decision below rests, an affirmance of the decision extends legal effect to the whole of the lower court's determination, with attendant collateral estoppel effect. Bank of America Nat. Trust & Sav. Ass'n v. McLaughlin Land & Livestock Co., 40 Cal.App.2d 620, 105 P.2d 607 (1940), cert. den., 313 U.S. 571, 61 S.Ct. 958, 85 L.Ed. 1529 (1941); and see People v. Skidmore, 27 Cal. 287 (1865) (establishing the rule in California). The rule is not without exceptions (see 15 Cal.Jur.

153),[6] but none appear available to the instant plaintiff. In short, plaintiff's first argument, whatever its ramifications, is without merit.

■ Second, plaintiff contends, in light of Nevada Revised Statutes § 690.-410 (now NRS § 690A.130) and defendant's failure to assert a lack of total disability under the waiver of premium clauses until its defense to this suit was submitted, that defendant should be equitably estopped from contesting whether plaintiff was disabled from June 1964 to the present. The Nevada statute referred to by plaintiff states, in pertinent part: ". . . All claims shall be settled as soon as possible and in accordance with the terms of the insurance contract." The statute provides no indication of the remedy available should claim settlement not be made "as soon as possible." The harsh remedy envisioned by plaintiff, equitable estoppel resulting in over 7 years of premium waiver such that the life insurance policies should be deemed to have a current value equivalent to policies for which premium payments have been paid, however, is unacceptable under the circumstances of this case.

■■ It should first be noted that in making this argument plaintiff does not assert that he was in fact disabled totally; he merely argues that his claim of total disability should have been acted upon by defendant in a speedier fashion. The issue presented boils down to this: granted that plaintiff must be deemed to have supplied "due proof" or notice of his claim for total disability waiver of

---

5. See notes 1 and 2, supra.

6. The cases there collected indicate that in California an exception is recognized such that where a finding is unnecessary and immaterial, the rule of collateral estoppel does not operate. See also Natural Soda Products Co. v. City of Los Angeles, 109 Cal. App.2d 440, 240 P.2d 993 (1952). To extend this exception so as to remove collateral estoppel effect from every alternative holding not addressed by an appellate court would be to allow the exception to swallow the general rule. While the principle of res judicata "is not to be applied so rigidly as to defeat the ends of justice" (Re Di Carlo's Estate and Guardianship, 3 Cal.2d 225, 44 P.2d 562, 567 (1935)), the ends of justice would not be served by permitting a relitigation of the disability issue presented in this case, an issue which was actively contested previously. Neither policy nor reason supports the application of an exception to the general rule in the instant case.

premiums to defendant,[7] is plaintiff entitled to those benefits when he is not, in fact, totally disabled because defendant did not act on that claim? Because plaintiff has not been misled or prejudiced by defendant's inaction, the answer is "No."

Plaintiff argues that defendant may not now deny coverage because it never told plaintiff that it felt he was not disabled. Silence may estop denial of coverage, however, only if it is misleading. National Ins. Underwriters, Inc. v. Bequette, 280 F.Supp. 842 (D. Alaska 1968). Even assuming, for the moment, that the two notices sent to plaintiff concerning the premiums which were overdue were not sufficiently related to the denial of the disability claim so as to give notice of such denial, the defendant successfully advanced the contention that plaintiff was not totally disabled during the course of plaintiff's litigation in the state court. It is difficult to imagine how plaintiff could have been misled by any "silence" on the part of defendant regarding the waiver of premium benefits when his suit on the income protection policy was being defended on the ground of no disability, the precise factor which would negate any obligation of the insurer to waive premiums in the life insurance policies. Beyond this, however, defendant was not "silent." On two occasions, December 18, 1964, and March 3, 1965, defendant notified plaintiff that premiums were in arrears and, finally, that the policies had lapsed for failure to pay premiums. While not a direct response to the disability claims, these notices are not inconsistent with the position that plaintiff was not totally disabled such that his obligation to pay premiums continued. Such a response is not to be lauded, but in the instant case it cannot be held to work a waiver or estoppel to assert lack of disability.

The rule is clear that an insurer is not estopped to cancel a life insurance policy in the absence of substantial evidence that the insured changed his position or in some manner was prejudiced by a delay on the part of the insurer. 15 Appleman, Insurance Law and Practice, supra, § 8403, p. 222; 16A Appleman, Insurance Law and Practice, supra, § 9256, p. 652, and § 9361, p. 807. Nor can estoppel be shown to exist where the insured knows the insurer will probably contest liability. See 16A Appleman, Insurance Law and Practice, supra, § 9259, p. 668. In particular:

"The general rule has grown up that in order for the insured to claim a waiver or estoppel to rely upon particular defenses by a denial of liability upon a different ground, it must be shown that he was lulled into security by the company's action so that it would be unfair to permit the defense,

---

7. Defendant has not contested the adequacy of the "due proof" of the disability submitted by plaintiff in accordance with the provisions of the policies (see text accompanying note 1), and it does not appear it is in a position to do so. First, the requirement of "due proof" of disability is satisfied if the proof submitted is ample to enable the insurer to consider its rights and liabilities, and it is unnecessary that proof must satisfy the insurer of existence of the disability under the terms of the policy. American Nat. Ins. Co. v. Yee Lim Shee, 104 F.2d 688 (9th Cir. 1939), cert. den. 308 U.S. 592, 60 S.Ct. 122, 84 L.Ed. 495. Such seems to have been met in this case. Second,
". . . (i)f the insurer fails to object to the notice or proofs on any ground within a reasonable time, such defects or insufficiency are waived, especially where . . . the delay operates to postpone the time of payment of the loss, or where it is for such a period as to render it impossible to remedy the defects within the time required by the policy." 44 Am. Jur.2d, Insurance, § 1519, p. 394.
See also 15 Appleman, Insurance Law and Practice, Revised Ed., § 8314, p. 129. Finally, by informing plaintiff that the policies were considered by defendant to have lapsed for nonpayment of premiums subsequent to plaintiff's submittal of the claim, defendant is deemed to have waived, or will be estopped to assert, any objection it has to the sufficiency of the proof or notice proffered by plaintiff. See 16A Appleman, Insurance Law and Practice, § 9260, p. 677; 44 Am. Jur.2d, Insurance, § 1514, p. 389.

or that there was a change of position, or prejudicial reliance thereon . . ."

Id. at § 9261, p. 681.

In the case here presented, plaintiff, once notified that the policies had lapsed, could have sued for damages or specific performance. See 43 Am.Jur. 2d, Insurance, § 454, p. 497. In choosing to first pursue a cause of action under the income protection policy, plaintiff was there, if not previously, apprised of the insurer's contention that he is not totally disabled. If plaintiff had been totally disabled he would, of course, be entitled to the benefits of all the policies. But plaintiff is not disabled, and the state court so found. Wherein is the prejudice, the unfairness, the change of position, the lull into security which would serve to bar defendant from raising this same defense now? It was plaintiff's choice not to sue on the life insurance policies immediately after notice of lapse. The only prejudice which may have occurred is that plaintiff may have ceased premium payments because of a belief that premiums would be waived following submittal of his claim;[8] but this result ignores the fact that defendant notified plaintiff that premiums were in arrears. With plaintiff not disabled, his choice of not thereafter paying premiums, as required by the policies, resulted in eventual lapse. It was plaintiff who chose to stand upon a false claim.

There has been a due determination of no total disability which was found in a prior state court action between the instant parties. Under familiar principles of collateral estoppel, that issue may not now be relitigated; and that issue is determinative in this case. The policies thus may be held to have lapsed for failure to pay premiums, the obligation of the insurer to waive premiums having never arisen.

8. Plaintiff does not assert that this was in fact the reason he ceased premium payments. At oral argument, plaintiff stated that he ceased the payments because he was "disabled." It is not the claim submittal nor

This opinion constitutes this Court's findings of fact and conclusions of law. Let summary judgment be entered in favor of the defendant.

the inaction of the insurer that is relied upon but, rather, the ultimate fact of total disability—a contention which has been rejected in the prior litigation.